## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOOGLE INC.<br>        Petitioner,<br><br>    v.<br><br>DIGITAL CITIZENS ALLIANCE<br>        Respondent. | **CASE NO.:** _____<br><br>**CASE IN OTHER COURT:**<br>No. 3:14-cv-00981-HTW-LRA (S.D. Miss.) |

## DECLARATION OF MICHAEL H. RUBIN IN SUPPORT OF GOOGLE INC.'S RULE 45 MOTION TO COMPEL COMPLIANCE WITH SUBPOENA

I, MICHAEL H. RUBIN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner with the law firm Wilson Sonsini Goodrich & Rosati, attorneys for Petitioner Google Inc. ("Google"). I submit this affidavit in support of Google's Federal Rule of Civil Procedure 45 Motion to Compel Compliance with Subpoena. The following facts are true of my personal knowledge and if called and sworn as a witness I could competently testify to them.

2.      Along with others at my firm, I have been involved with Google's efforts to obtain discovery from third parties to support its claims against Mississippi Attorney General Jim Hood ("AG Hood") in *Google Inc. v. Hood* (3:14-cv-00981-HTW-LRA, S.D. Miss.) ("*Google Inc. v. Hood*"). To date, Google has served eight subpoenas on third parties:

      a.      A March 12, 2015 subpoena served on the law firm of Jenner & Block ("Jenner"), a true and correct copy of which is attached hereto as Exhibit 1.

b.  A March 12, 2015 subpoena served on the Motion Picture Association of America, Inc. ("MPAA"), a true and correct copy of which is attached hereto as Exhibit 2.

c.  A March 12, 2015 subpoena served on Twenty-First Century Fox, Inc. ("Fox"), a true and correct copy of which is attached hereto as Exhibit 3.

d.  A March 12, 2015 subpoena served on Viacom, Inc. ("Viacom"), a true and correct copy of which is attached hereto as Exhibit 4.

e.  A March 12, 2015 subpoena served on NBCUniversal Media, LLC ("NBC"), a true and correct copy of which is attached hereto as Exhibit 5.

f.  A March 12, 2015 subpoena served on the Digital Citizens' Alliance ("DCA"), a true and correct copy of which is attached hereto as Exhibit 6.

g.  A May 12, 2015, subpoena served on the Recording Industry Association of America that set a compliance date of May 29, 2015.

h.  A May 21, 2015 subpoena served on the law firm of Orrick, Herrington & Sutcliffe LLP that set a compliance date of June 8, 2015.

**Initial Correspondence Regarding Subpoenas**

3.  On March 23 and 24, 2015, my partner, David Kramer, received letters from counsel for many of the subpoenaed parties, in which they each took the same position that Google's subpoenas to their clients had been prematurely served.

a.  A true and correct copy of Jenner attorney Jeremy Creelan's March 23 letter on behalf of the MPAA is attached hereto as Exhibit 7.

b.  A true and correct copy of Jenner attorney Scott Wilkens's March 23 letter on behalf of Fox is attached hereto as Exhibit 8.

    c.      A true and correct copy of Massey & Gail attorney Eli Kay-Oliphant's March 24 letter on behalf of the DCA is attached hereto as Exhibit 9.

4.      Between March 27 and March 30, 2015, Mr. Kramer received a second round of letters from counsel for many of the subpoenaed parties in which they each reiterated their view that Google's subpoena to their clients had been prematurely served. Along with these letters, the subpoenaed parties also asserted a series of general objections to the subpoena.

    a.      A true and correct copy of Jenner attorney Norman Hirsch's March 27 letter on behalf of Jenner is attached hereto as Exhibit 10.

    b.      A true and correct copy of Mr. Creelan's March 27 letter on behalf of the MPAA is attached hereto as Exhibit 11.

    c.      A true and correct copy of Mr. Wilkens' March 27 letter from on behalf of Fox, NBC, and Viacom is attached hereto as Exhibit 12.

    d.      A true and correct copy of Mr. Kay-Oliphant's March 30 letter on behalf of the DCA is attached hereto as Exhibit 13.

5.      Google (together with AG Hood's office) raised this issue before Judge Wingate in the Southern District of Mississippi to clarify and confirm that discovery had in fact opened on March 2, 2015. On April 10, 2015, Judge Wingate issued an order reconfirming that third party discovery had commenced on March 2, 2015. Attached hereto as Exhibit 14 is a true and correct copy of Judge Wingate's April 10, 2015 Order on *Ore Tenus* Discovery Motion in *Google Inc. v. Hood.*

6.      The same day that Judge Wingate issued that Order (April 10, 2015), Mr. Kramer sent letters to counsel for the subpoena recipients (the MPAA, the DCA, Jenner, Fox, NBC, and Viacom) informing them of the ruling and attaching the order, and voluntarily extending their

deadline to respond Google's subpoena to April 17, 2015. True and correct copies of those letters are attached hereto as Exhibits 15 through 18.

7.       On April 17, 2015, Mr. Kramer received another round of letters from counsel for the subpoenaed parties in which they each once again reiterated the same view that the subpoenas had been prematurely served.

      a.       A true and correct copy of Jenner Attorney Christopher Tompkins's April 17 letter on behalf of Jenner is attached hereto as Exhibit 19.

      b.       A true and correct copy of Mr. Creelan's April 17 letter on behalf of the MPAA is attached hereto as Exhibit 20.

      c.       A true and correct copy of Mr. Wilkens's April 17 letter on behalf of Fox, NBC, and Viacom is attached hereto as Exhibit 21.

      d.       A true and correct copy of Mr. Kay-Oliphant's April 17 letter on behalf of the DCA is attached hereto as Exhibit 22.

8.       On April 20, 2015, I responded via letter to counsel for the subpoena recipients advising them that each subpoenaed party had waived the right to assert new objections by failing to do so by the extended deadline. True and correct copies of those letters are attached hereto as Exhibits 23 through 26.

9.       On April 24, 2015, Mr. Kramer and I received letters from counsel for some of the subpoenaed parties, as well as purported "Amended Responses and Objections" from counsel for all of the subpoenaed parties.

      a.       A true and correct copy of Mr. Tompkins's April 24 letter and Jenner's purported amended responses and objections is attached hereto as Exhibit 27.

b.      A true and correct copy of Mr. Creelan's April 24 letter and the MPAA's
purported amended responses and objections is attached hereto as Exhibit 28.

c.      True and correct copies of Fox, NBC, and Viacom's purported sets of
amended responses and objections are attached hereto as Exhibits 29 through
31, respectively.

d.      A true and correct copy of the DCA's purported amended responses and
objections is attached hereto as Exhibit 32.

**The Meet and Confer Process**

10.     On May 11, 2015, I met and conferred by phone with Mr. Tompkins, Mr. Hirsch,
and David Handzo of Jenner regarding Jenner's objections to the March 12, 2015 subpoena
served by Google. Among the positions they took on that call were that Jenner's continued
assertions of privilege and work product would depend on the outcome of Judge Wingate's
ruling on Google's Motion to Compel against AG Hood pending in *Google Inc. v. Hood*,
although the firm would not agree to be bound by the ruling. They also stated that Jenner would
not produce any documents other than a set of communications with AG Hood's Office and
certain documents showing campaign contributions that they identified as relevant. Mr.
Tompkins, Mr. Hirsch, and Mr. Handzo also indicated that Jenner would not produce documents
until a protective order was entered in the underlying action and would not consent to the transfer
of any motion to compel brought by Google to the Mississippi Court under Rule 45(f).

11.     On May 11, 2015, I met and conferred by phone with Mr. Wilkens and Anna-
Marie Van Heuzen of Jenner regarding the objections by Fox, NBC, and Viacom to the March
12, 2015 subpoenas served by Google. During this call, Mr. Wilkens took positions for Fox,
NBC, and Viacom with respect to the subpoenas that tracked those taken by Jenner. Fox, NBC,

and Viacom each refused to produce any documents other than written correspondence with AG

Hood's Office in which someone from Fox, NBC, or Viacom was also a recipient, as well as

documents sufficient to show financial campaign contributions to AG Hood and/or the

Democratic Attorneys General Association. Like Jenner, Mr. Wilkens indicated that Fox, NBC

and Viacom would not produce documents until a protective order was entered in the underlying

action and would not consent to the transfer of any motion to compel brought by Google to the

Mississippi Court under Rule 45(f).

12.     On May 13, 2015, I met and conferred by phone with Mr. Creelan and Micah

Cogen of Jenner regarding the MPAA's objections to the March 12, 2015 subpoena served by

Google. During this call Mr. Creelan and Mr. Cogen explained the MPAA's positions on the

MPAA Subpoena, which were nearly identical to those taken by Jenner, Fox, NBC, and Viacom.

Along with other common positions, they also indicated that the MPAA's positions on privilege

and production of documents in response to the MPAA Subpoena would depend on the outcome

of Judge Wingate's ruling on Google's Motion to Compel pending in *Google Inc. v. Hood*, and

that they, too, refused to be bound by it. Like the other subpoena recipients, they also stated that

the MPAA would not produce any documents other than direct communications with AG Hood's

Office and documents sufficient to show financial campaign contributions. And they, too, stated

the MPAA would not consent to the transfer of any motion to compel brought by Google to the

Mississippi Court under Rule 45(f). Like Jenner, Fox, NBC, and Viacom, Mr. Creelan and Mr.

Cogen indicated that the MPAA would not produce documents until a protective order was

entered in the underlying action.

13.     On May 19, 2015, I met and conferred by phone with Mr. Kay-Oliphant and

Jeremy Mallory of the firm Massey & Gail regarding the DCA's objections to the March 12,

2015 subpoena served by Google. During this call, Mr. Kay-Oliphant explained the DCA's positions on the subpoena, which were nearly identical to those taken by the subpoena recipients that Jenner is representing: the MPAA, Fox, NBC, Viacom, and Jenner itself. The DCA would not agree to produce any documents other than direct communications with AG Hood's Office and documents sufficient to show financial campaign contributions. And they would not consent to the transfer of any motion to compel brought by Google to the Mississippi Court under Rule 45(f).

14.     Following each of the meet and confer teleconference outlined above, I sent a letter to counsel for the subpoena recipients regarding the call:

a.     A true and correct copy of the May 13 letter regarding the meet and confer that I conducted with counsel for Jenner is attached hereto as Exhibit 33.

b.     A true and correct copy of the May 13 letter regarding the meet and confer that I conducted with counsel for Fox, NBC, and Viacom is attached hereto as Exhibit 34.

c.     A true and correct copy of the May 14 letter regarding the meet and confer that I conducted with counsel for the MPAA is attached hereto as Exhibit 35.

d.     A true and correct copy of the May 19 letter regarding the meet and confer that I conducted with counsel for the DCA is attached hereto as Exhibit 36.

15.     Between May 20, 2015 and May 26, 2015, I received response letters from counsel for the subpoenaed parties indicating that they stood by the positions they had taken during the meet and confers that we had conducted.

a.     A true and correct copy of Mr. Creelan's May 20 letter on behalf of the MPAA is attached hereto as Exhibit 37.

b.    A true and correct copy of Mr. Handzo's May 21 letter on behalf of Jenner is attached hereto as Exhibit 38.

c.    A true and correct copy of Mr. Wilkens's May 22 letter on behalf of Fox, NBC, and Viacom is attached hereto as Exhibit 39.

d.    A true and correct copy of Mr. Kay-Oliphant's May 26 letter on behalf of the DCA is attached hereto as Exhibit 40.

16.    On May 27, 2015, I responded separately via letter to counsel for the subpoena recipients. My letters responded to various characterizations that the subpoena recipients had made in prior correspondence, and explained that, in light of their positions, the parties were at at an impasse regarding the subpoenas. I offered each subpoenaed party the option to withdraw their objections and explained that if they did not, Google planned to move to compel their responses:

a.    A true and correct copy of my May 27 letter to Mr. Tompkins and Jenner attached hereto as Exhibit 41.

b.    A true and correct copy of my May 27 letter to Mr. Creelan and the MPAA is attached hereto as Exhibit 42.

c.    A true and correct copy of my May 27 letter to Mr. Wilkens and Fox, NBC, and Viacom is attached hereto as Exhibit 43.

d.    A true and correct copy of my May 27 letter to Mr. Kay-Oliphant and the DCA is attached hereto as Exhibit 44.

17.    On May 28, 2015, five of the subpoena recipients responded to my May 27 letter (Jenner did not respond at that time). None agreed to withdraw its objections, and each stood by the positions it previously taken that lead to the impasse.

     a.     A true and correct copy of Mr. Creelan's May 28 letter on behalf of the MPAA is attached hereto as Exhibit 45.

     b.     A true and correct copy of Mr. Wilkens's May 28 letter on behalf of Fox, NBC, and Viacom is attached hereto as Exhibit 46.

     c.     A true and correct copy of Mr. Kay-Oliphant's May 28 letter on behalf of the DCA is attached hereto as Exhibit 47.

18.     On May 29, 2015, I responded to each of the subpoena recipients that had written to me the prior day. My letter addressed various issues raised by their letters, and renewed Google's offer to forgo motion practice if they would withdraw their objections, produce the documents sought by the subpoena along with a privilege log reflecting any document withheld on the basis of a valid privilege. These letters went without response by the deadline set, which confirmed that the parties are at an impasse.

     a.     A true and correct copy of my May 29 letter to Mr. Creelan and the MPAA is attached hereto as Exhibit 48.

     b.     A true and correct copy of my May 29 letter to Mr. Wilkens and Fox, NBC, and Viacom is attached hereto as Exhibit 49.

     c.     A true and correct copy of my May 29 letter to Mr. Kay-Oliphant and the DCA is attached hereto as Exhibit 50.

19.     Later on May 29, 2015, and after I had responded to the subpoena recipients above, I received a response to my May 27 letter from David Handzo on behalf of Jenner. In that response, Mr. Handzo made clear that Jenner would not withdraw its objections and continued to stand by its prior positions.

a.      A true and correct copy of Mr. Handzo's May 21 letter on behalf of Jenner is

attached hereto as Exhibit 51.

**Authentication of Other Exhibits**

20.     Attached hereto as Exhibit 52 is a true and correct copy of Judge Wingate's
March 2, 2015 Order granting Google's Motion for Temporary Restraining Order and granting
Google's Motion for Preliminary Injunction in *Google Inc. v. Hood.*

21.     Attached hereto as Exhibit 53 is a true and correct copy of Judge Wingate's
March 27, 2015 Order denying AG Hood's Motion to Dismiss and granting Google's Motion for
Temporary Restraining Order and Preliminary Injunction in *Google Inc. v. Hood.*

22.     Attached hereto as Exhibit 54 is a true and correct copy of the transcript
containing AG Hood's remarks from the June 2013 meeting of the National Association of
Attorneys General.

23.     Attached hereto as Exhibit 55 is a true and correct copy of a September 12, 2013
email exchange between AG Hood and Tom Perrelli that was produced by AG Hood in *Google
Inc. v. Hood* and Bates Numbered D-000074-77.

24.     Attached hereto as Exhibit 56 is a true and correct copy of an October 24, 2013
email from AG Hood to the MPAA that was produced by AG Hood in *Google Inc. v. Hood* and
Bates Numbered D-000068.

25.     Attached hereto as Exhibit 57 is a true and correct copy of an October 24, 2013
email from Van Stevenson to AG Hood that was produced by AG Hood in *Google Inc. v. Hood*
and Bates Numbered D-000069.

26.     Attached hereto as Exhibit 58 is a true and correct copy of an email thread ending November 15, 2013 that was produced by AG Hood in *Google Inc. v. Hood* and Bates Numbered D-000081-85.

27.     Attached hereto as Exhibit 59 is a true and correct copy of a November 27, 2013 email exchange between AG Hood and Vans Stevenson, the MPAA's Vice-President of state legislative affairs that was produced by AG Hood in *Google Inc. v. Hood* and Bates Numbered D-000001-03.

*****

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. Executed on May 30, 2015 in San Francisco, California

Michael H. Rubin