# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GOOGLE INC. | ) | |
| Petitioner, | ) | |
|  | ) | Case No. 1:15-mc-707-JEB-DAR |
| v. | ) | |
|  | ) | Case in Other Court: |
|  | ) | No. 3:14-cv-981-HTW-LRA (S.D. Miss.) |
| DIGITAL CITIZENS ALLIANCE, | ) | |
| MOTION PICTURE ASSOCIATION OF | ) | |
| AMERICA, INC., and | ) | |
| JENNER & BLOCK LLP | ) | |
| Respondents. | ) | |
|  | ) | |
|  | ) | |

## NON-PARTY DIGITAL CITIZENS ALLIANCE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GOOGLE INC'S MOTION TO COMPEL

MASSEY & GAIL LLP
Jonathan S. Massey (D.C. Bar No. 457593)
Eli J. Kay-Oliphant (D.C. Bar No. 503235)
1325 G Street, N.W.
Suite 500
Washington, DC  20005
Email: ekay-oliphant@masseygail.com
Telephone: 202.652.4511
Fax: 312.379.0467

*Attorneys for Subpoenaed Non-Party*
*Digital Citizens Alliance*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT BACKGROUND ................................................................................................. 3

ARGUMENT ......................................................................................................................... 7

  I.   GOOGLE'S MOTION TO COMPEL IS PREMATURE. ......................................................... 7

  II.  GOOGLE'S MOTION TO COMPEL SHOULD BE DENIED AND THE NON-PARTY
       SUBPOENA SHOULD BE QUASHED OR MODIFIED. ..................................................... 10

  III. THE COURT SHOULD AWARD DCA ITS FEES TO OPPOSE GOOGLE'S MOTION
       TO COMPEL. ...................................................................................................... 16

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. FBI*, 186 F.R.D. 185 (D.D.C. 1999) ..................................................... 8, 9

*Boyd v. Grassmick*, 216 F.R.D. 166 (D.D.C. 2003)................................................... 7, 9

*Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332 (D.D.C. 2011) ............. 10, 15

*Campbell v. Microsoft Corp.*, No. CIV.A.04-2060, 2006 WL 463263
  (D.D.C. Feb. 24, 2006)........................................................................... 7, 8, 9

*Coleman v. D.C.*, 275 F.R.D. 33 (D.D.C. 2011).................................................... 11, 14

*D.L. v. District of Columbia*, 251 F.R.D. 38 (D.D.C. 2008)........................................ 16

*Eisemann v. Greene*, 97 Civ. 6094, 1998 WL 164821 (S.D.N.Y. Apr. 8, 1998) .................. 10, 15

*Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911,
  2004 WL 719185 (S.D.N.Y. Apr. 1, 2004)........................................................ 10, 15

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*,
  257 F.R.D. 12 (D.D.C. 2009)..................................................................... 12, 13

*Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C. Cir. 2001)................................... 16

*N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005) ................. 10, 11, 14, 15

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 Civ. 1382, 2003 WL 23018833
  (S.D.N.Y. Dec. 23, 2003)........................................................................ 11, 14

*Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451 (E.D.N.C. 2005)................................ 12

*U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*,
  235 F.R.D. 521 (D.D.C. 2006) ................................................................... 7, 8, 9

*WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891 (S.D. Ind. 2006) ................................. 12

*Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449 (D.D.C. 2002)................................. 10, 15

**Other Authorities**

Google's Opposition to the Government's Motion to Compel, *Gonzales v. Google*, No. 6-mc-80006-JW (N.D. Cal. Feb. 17, 2006) ........................................................................... 14

Hearing on Motion for TRO, Preliminary Injunction, and the Motion to Dismiss, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (March 12, 2015)......................................................... 6

Memorandum of Google in Support of Motion for a Protective Order, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (June 8, 2015)............................................................. 1, 11, 14

Order, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (March 2, 2015) ......................... 3

**Statutes**

FED. R. CIV. P. 26(b)(2)(C) ........................................................................................................ 11

FED. R. CIV. P. 37(a)(1) ............................................................................................................... 7

FED. R. CIV. P. 37(a)(5)(B) ........................................................................................................ 16

FED. R. CIV. P. 45(c) .................................................................................................................. 15

## PRELIMINARY STATEMENT

Digital Citizens Alliance ("DCA") is not party to the Mississippi lawsuit between Google Inc. ("Google") and the Attorney General of the State of Mississippi James Hood ("Attorney General Hood"), captioned *Google Inc. v. Hood*, No. 3:14-cv-981-HTW-LRA (S.D. Miss.) (the "Underlying Action"). That lawsuit, in Google's own words, pertains to "whether the Attorney General can regulate Google's making accessible a specific type of content—content created by third parties that the Attorney General deems objectionable." Memorandum of Google in Support of Motion for a Protective Order at 3, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (June 8, 2015). Google recently represented to the Underlying Action court that its claims involve "***a legal question, squarely answered by the Constitution and the Communications Decency Act***." *Id.* (emphasis added).

Despite Google's position that the Underlying Action turns on a legal question, Google served DCA with a non-party subpoena (the "Non-Party Subpoena") demanding a remarkably wide range of documents and information that are in large part either irrelevant to the Underlying Action or subject to privilege. DCA diligently and at considerable expense worked (and continues to work) to comply with the Non-Party Subpoena despite its reasonable objections. Indeed, DCA reviewed and considered Google's requests, investigated what documents it had and collected the same, contracted with a document review and production vendor, investigated applicable privileges, conducted an extensive review, prepared to produce documents, and engaged in correspondence with Google's counsel to begin the meet-and-confer process.

Google did not reciprocate DCA's good faith. Despite DCA's willingness and availability to meet again, Google met and conferred with DCA only ***once***. During that meeting DCA explained its initial positions, responses, and objections, provided substantial information regarding its significant efforts to comply with the Non-Party Subpoena, agreed to provide Google

the terms used to search through its documents, and at Google's request pledged to investigate further the basis for one of its privilege claims. After the meet-and-confer, DCA continued to in good faith work to satisfy Google's requests. For example, DCA further investigated the factual basis underlying its privileges,[1] continued to review documents, and considered Google's arguments and positions regarding relevance. Only six business days later, however, and despite DCA's willingness to continue to meet-and-confer, Google threatened to file the instant motion unless DCA abandoned its responses and objections *in their entirety*. DCA refused this ultimatum, pointed out DCA's availability to meet and confer further as well as the open issues the parties should work to resolve, and requested that Google clarify and provide the basis for its arguments. Rather than engage, Google filed the instant motion and now seeks to haul DCA into court in Mississippi.[2]

This Court should not allow such harassment. Per Google's own words the documents and information it seeks from DCA are largely irrelevant to the Underlying Action. Despite this, DCA in good faith and at great expense and disruption to its work made efforts to comply with the Non-Party Subpoena. Dead set on litigating, Google ignored DCA's diligence and the many open issues that make consideration by this Court untimely. As such, this Court should deny Google's Motion

---

[1] For example, during the meet-and-confer Google's counsel argued that communications between DCA and its attorney Mike Moore (and his firm) should be treated as communications between DCA and Attorney General Hood due to an engagement letter between Mike Moore's law firm and Attorney General Hood. DCA in good faith pledged to Google that it would investigate the basis of its claim of an attorney-client relationship with Mike Moore and his law firm and to consider the legal question of how an attorney-client relationship between Attorney General Hood and Mike Moore's law firm would impact the same. That investigation was ongoing and DCA had requested that Google provide legal authority for its position at the time that Google filed the instant motion to compel. Google has decided to ignore that request, disregard DCA's invitation to discuss the matter further, and instead to file a motion to compel with this Court.

[2] By a separate motion, Google seeks to transfer this litigation to the federal court in Mississippi where Google filed the Underlying Action. DCA, a non-party based in Washington, D.C. that does no business in Mississippi and is connected to the Underlying Action only by virtue of having filed a Motion for Leave to File Brief of Amicus Curiae, will oppose transfer.

to Compel, quash or modify the Non-Party Subpoena, and award DCA its reasonable attorneys' fees and costs to oppose this motion.

## RELEVANT BACKGROUND

DCA is a Washington, D.C.-based consumer-focused coalition of organizations, businesses, and Internet experts focused on educating the public and policymakers on the threats people from all walks of life face on the Internet. DCA widely investigates and reports on online crime and scams, including the sale of stolen credit card information, online sale of steroids and prescription drugs, content theft, phishing, and counterfeiting, as well as criminals' methods for committing these crimes. As a non-party to the Underlying Action, DCA is entitled to the protections of Civil Rule 45 as to the scope of discovery to which it may properly be subjected.

The Underlying Action was filed by Google against Attorney General Hood to challenge whether Attorney General Hood has the legal authority to serve Google with a civil investigative demand. Nothing in DCA's possession, custody, or control informs the legal question of whether Attorney General Hood has such authority.

On March 2, 2015, Judge Wingate entered an Order in the Underlying Action which in relevant part stated that after Judge Wingate published a subsequent detailed ruling Attorney General Hood "shall have 14 days to file his answer to the Complaint," and "the parties shall be permitted 90 days for discovery *from the date of the filing of [Attorney General Hood's] answer . . . .*" Order at 3-4, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (March 2, 2015) (the "March 2 Order") (emphasis added).[3] Before discovery began, on March 12, 2015, Google served DCA with the Non-Party Subpoena which included sweeping requests such as that DCA produce

---

[3] Declaration of Eli J. Kay-Oliphant ("Kay-Oliphant Decl."), Exhibit ("Exh.") 1.

all *internal* DCA documents that in any way *relate or refer* to both Attorney General Hood and Google.[4]

On March 24, 2015, DCA wrote to Google to advise that because the Non-Party Subpoena was served prior to the commencement of discovery in the Underlying Action, the Non-Party Subpoena was premature and DCA would deem it served, per the March 2 Order, when Attorney General Hood served his answer.[5] Google did not respond. On March 27, 2015, Judge Wingate filed his detailed ruling.[6] On March 30, 2015, DCA wrote to Google again to both reiterate that DCA would deem the Non-Party Subpoena served on the future date upon which discovery commences as well as provide preliminary responses and objections to the Non-Party Subpoena.[7] Google, again, did not respond. Attorney General Hood filed his answer on April 10, 2015 (thus opening discovery in the Underlying Action—per the March 2 Order—on that date). Judge Wingate subsequently filed an Order on April 10, 2015 (the "April 10 Order")[8] that stated in relevant part and in contradiction with the March 2 Order that "[d]iscovery commenced for the parties and third parties on March 2, 2015."[9]

On April 10, 2015, Google responded to DCA for the first time and in relevant part imposed an arbitrary deadline for DCA to provide responses and objections to the Non-Party Subpoena one week from that date, on April 17, 2015.[10] On April 17, 2015, DCA wrote to Google to explain that DCA had relied upon both the March 2 Order and Google's failure to object to the approach outlined in DCA's prior letters and as such DCA would provide responses and objections to the

---

[4] Kay-Oliphant Decl., Exh. 2.
[5] Kay-Oliphant Decl., Exh. 3.
[6] Kay-Oliphant Decl., Exh. 4.
[7] Kay-Oliphant Decl., Exh. 5.
[8] Kay-Oliphant Decl., Exh. 6.
[9] DCA will discuss the March 2 Order, DCA's reliance thereon, and the April 10 Order's contradiction with the March 2 Order in DCA's forthcoming Opposition to Google's Motion to Transfer.
[10] Kay-Oliphant Decl., Exh. 7.

Non-Party Subpoena within the 14-day period prescribed by Federal Rule of Civil Procedure 45, by April 24, 2015,[11] and on April 24, 2015, DCA provided its full responses and objections to the Non-Party Subpoena.[12]

On May 19, 2015, DCA and Google met and conferred regarding the Non-Party Subpoena. The meet-and-confer call was productive, lasting approximately an hour. During the call, DCA provided information about its substantial efforts to collect and review documents, the status of the review, and the status of DCA's investigation of its privilege claims. DCA also took the reasonable position that it believes it does have some documents that may be relevant to the Underlying Action, and that DCA would produce those subject to proper relevance scoping and privilege limitations. Google then wrote DCA a letter on May 19, 2015 (the "May 19 Letter") purportedly memorializing the parties' positions.[13] Attached to May 19 Letter was a copy of a redacted engagement letter between Mike Moore Law Firm, LLC and the State of Mississippi. On May 26, 2015, DCA wrote a letter to Google (the "May 26 Letter") to correct certain of Google's mischaracterizations of DCA's positions.[14] Showing good faith, the May 26 Letter in relevant part provided Google the requested list of terms DCA had used to search through its documents. Additionally, DCA stated in relevant part that its review of documents was ongoing and that— based on the Mike Moore Law Firm, LLC engagement letter Google provided just one week prior—DCA was investigating the factual and legal basis for its claim of an attorney-client relationship with Mike Moore and his law firm.

---

[11] Kay-Oliphant Decl., Exh. 8.
[12] Kay-Oliphant Decl., Exh. 9.
[13] Kay-Oliphant Decl., Exh. 10.
[14] Kay-Oliphant Decl., Exh. 11.

On May 27, 2015, despite DCA's good faith and willingness to continue to meet and confer on these substantial open issues, Google responded with a letter (the "May 27 Letter")[15] that demanded that DCA withdraw all its objections and produce documents by close of business *the next day*. DCA responded with a letter on May 28, 2015,[16] stating, in relevant part, that a motion to compel would be premature, in view of the facts that (i) Google and DCA had met and conferred only ***once***; (ii) DCA was still investigating the privilege point raised by Google on May 19, 2015; and (iii) DCA was still considering Google's argument regarding relevance. DCA also requested that Google in good faith provide legal authority supporting its argument regarding privilege before filing any costly, unnecessary, and premature litigation.

On June 1, 2015, Google filed its Motion to Compel and accompanying Memorandum of Points and Authorities in Support (the "MTC").[17] Tellingly, Google's papers contain sparse mention of DCA. Google claims in part that DCA "acquired significant influence with state law enforcers, particularly with the Mississippi Attorney General," but to support that claim Google points to a news article which relies upon improperly leaked documents and *does not mention DCA at all*.[18] Google tries to paint DCA as part of "an extensive and secret anti-Google lobbying campaign," but the article Google cites to support that claim makes clear that the campaign is not a secret at all[19] and the judge in the Underlying Action has commented that Google's allegations of some sort of campaign would be irrelevant to the Underlying Action.[20] In large part Google

---

[15] Kay-Oliphant Decl., Exh. 12.
[16] Kay-Oliphant Decl., Exh. 13.
[17] Kay-Oliphant Decl., Exh. 14.
[18] MTC at 2 & n.3 (article linked in citation does not mention DCA).
[19] *Id*. at 4; *see also id*. & n.6 (the linked article quotes Mike Moore as stating "I don't think there is any secret that there is a group of interested industry people who have a problem and they are concerned about how Google is doing their business").
[20] *See* Hearing on Motion for TRO, Preliminary Injunction, and the Motion to Dismiss, at 73:12-15, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (March 12, 2015) (the Court stated "I can't think of why it would be germane

simply groups DCA with the other "Subpoenaed Parties,"[21] failing to explain with any particularity why it needs DCA's documents and information. Google paints with too broad a brush, and none of its unfounded accusations justify Google's invasive fishing expedition.

## ARGUMENT

## I.    GOOGLE'S MOTION TO COMPEL IS PREMATURE.

A motion to compel discovery "must include a certification that the movant has *in good faith* conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." FED. R. CIV. P. 37(a)(1) (emphasis added). Similarly, Local Civil Rule 7.1(m) "requires that the parties discuss the anticipated motion and make a good faith effort to narrow the areas of disagreement before filing any nondispositive motion." *Boyd v. Grassmick*, 216 F.R.D. 166, 168 n.2 (D.D.C. 2003). "The term 'good faith' is not defined in Rule 37, but generally encompasses 'honesty in belief or purpose, faithfulness to one's duty or obligation . . . or absence of intent to defraud or to seek unconscionable advantage.'" *Campbell v. Microsoft Corp.*, No. CIV.A.04-2060, 2006 WL 463263, at *2 (D.D.C. Feb. 24, 2006) (citing BLACK'S LAW DICTIONARY 713 (8th ed. 2004); *Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996)). "The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the non-dispositive disputes that occur in the course of litigation." *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2006) (finding failure of good faith even where there had been some communication between the parties regarding discovery but efforts to resolve the disputes were insubstantial).

---

to a ruling by the court" with regard to Google's allegation of an anti-Google campaign), Kay-Oliphant Decl., Exh. 15.

[21] *See* MTC at 2 & nn.3-4; 4-7 & nn.7, 9, 10, 13 (cited articles do not mention DCA); *but see id.* at 4 n.6 (cited article mentions DCA); 7 n.11 (same).

Failure to comply with this rule justifies denial of the motion to compel. *Campbell*, 2006 WL 463263, at *2-4 (denying reconsideration of denial of motion to compel because, *inter alia*, defendant engaged with plaintiff, explained defendant's positions and demonstrated amenability to resolving disputes without involving the court and therefore "plaintiff did not behave in a spirit of cooperation in seeking a resolution before involving the court"); *Pogue*, 235 F.R.D. at 529 ("failure to comply with the conference requirement is sufficient basis to deny a motion to compel"). The purpose of this rule is "for litigants to attempt to resolve, or . . . narrow, the disputed issues to prevent unnecessary waste of time and effort on any given motion," not "to simply determine whether the motion will be opposed." *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999).

Google's Motion to Compel is premature. Google and DCA have had only *one* meet-and-confer prior to Google filing its motion. During that meet-and-confer, DCA in good faith provided significant information about its efforts to comply with the Non-Party Subpoena, pledged to provide the search terms it was using to search through and review documents, fully explained its positions regarding relevance, engaged with Google regarding possible privilege issues, and described the relevant set of documents DCA was willing to and was working hard to produce. Google took a position regarding DCA's attorney-client relationship with Mike Moore and his law firm, and DCA pledged to investigate the factual and legal basis of Google's position. After the meet-and-confer, DCA continued to work toward production, to investigate and consider the attorney-client privilege point raised for the first time by Google at the meet-and-confer, and to consider Google's positions regarding relevance.

Despite DCA's efforts to comply, both before and after the sole meet-and-confer, and DCA's willingness and availability to continue to meet-and-confer regarding new or unresolved

open issues, via letter six business days after the meet-and-confer Google threatened to initiate motion practice unless DCA abandoned its responses and objections to the Non-Party Subpoena *in their entirety*. Rather than in good faith attempting to "narrow the areas of disagreement," *Boyd*, 216 F.R.D. at 168 n.2, this threat demonstrated that Google intended to comply with the meet-and-confer requirement only in a "perfunctory" way, *Pogue*, 235 F.R.D. at 529. Indeed, even where there has been a meet-and-confer, the party filing a motion to compel can be in violation of Rule 37 if its attempts to resolve open issues is insubstantial. *See Pogue*, 235 F.R.D. at 529.

At the time that Google filed its motion, DCA had informed Google that it was investigating the scope of its relationship with Mr. Moore and his firm and considering Google's position. DCA also requested that Google in good faith provide legal authority justifying its position regarding attorney-client privilege, so that the parties could further meet-and-confer. With many open issues for which the parties could meet and confer, Google failed to narrow the disputed issues "to prevent unnecessary waste of time and effort," *Alexander*, 186 F.R.D. at 187. Indeed, Google's treatment of DCA's potential privileges, which is overly generalized and not tailored to DCA in any way,[22] demonstrates that Google failed to meaningfully engage with DCA or to attempt to narrow areas of disagreement.[23] This was not good faith, and when Google filed its motion it failed to "behave in a spirit of cooperation in seeking a resolution before involving the court," *Campbell*, 2006 WL 463263, at \*2. The Motion to Compel should therefore be denied.

---

[22] *See* MTC, at 15-24.

[23] DCA has an attorney-client relationship with Mike Moore and his firm, and additionally reserves the right to assert all privileges outlined in its Responses and Objections to the Non-Party Subpoena. Google's omission of DCA's potential attorney-client privilege over communications with Mike Moore and his firm is just one example of Google's perfunctory, insubstantial compliance with its meet-and-confer obligations.

**II.     GOOGLE'S MOTION TO COMPEL SHOULD BE DENIED AND THE NON-PARTY SUBPOENA SHOULD BE QUASHED OR MODIFIED.**

"Pursuant to Federal Rule of Civil Procedure 45, the Court must quash a subpoena issued to a nonparty if the subpoena subjects the nonparty to an undue burden or expense." *Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 354 (D.D.C. 2011) (citing FED. R. CIV. P. 45(c)).

> When evaluating whether the burden of subpoena compliance is "undue," the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the litigant's need for the information. The court must limit discovery when the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). The 'undue burden' test also requires the court to be "***generally sensitive to the costs imposed on third-parties***."

*Id.* at 354-55 (emphasis added) (internal citations omitted). "Non-party status is one of the factors the court uses in weighing the burden of imposing discovery." *Wyoming v. U.S. Dep't of Agric.*, 208 F.R.D. 449, 452-53 (D.D.C. 2002); *see also N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51 (D.D.C. 2005) ("non-party status is also relevant in considering the burden"); *Fears v. Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004) ("where, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party"); *Eisemann v. Greene*, 97 Civ. 6094, 1998 WL 164821, at *2 (S.D.N.Y. Apr. 8, 1998) (granting motion to quash deposition of non-party on the ground that requested information was of "doubtful and tangential relevance"). Additionally, non-parties should not be subjected to extensive discovery simply due to their status as amici. *See N. Carolina Right to Life*, 231 F.R.D. at 51-52.

10

> The mere filing of an amicus brief . . . does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action. . . . [I]mposing such a burden on amici would undoubtedly discourage entities from making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests. . . .

*Id.*

While relevance is broadly construed for purposes of discovery, courts will not "allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Coleman v. D.C.*, 275 F.R.D. 33, 37 (D.D.C. 2011) (quoting *St. John v. Napolitano*, No. 10-cv-00216, 2011 WL 1193009, at *3 (D.D.C. March 31, 2011)). "Inasmuch as a showing of relevance can be viewed as a showing of need, Plaintiff is presumed to have no need of a matter not relevant to the subject matter involved in the pending action." *Id.* (citations and internal quotations omitted); *see also* Memorandum of Google in Support of Motion for a Protective Order at 10, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (June 8, 2015) (Google, in the Underlying Action, stated that discovery "must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered" particularly where "the proposed discovery would impose great burden without any discernible benefit"). And the party seeking discovery bears the burden of proving that the documents and information it seeks are relevant and material to the allegations and claims at issue. *See N. Carolina Right to Life*, 231 F.R.D. at 52 (quashing subpoena as to non-party amici and stating "Plaintiffs have failed to demonstrate relevance"); *see also Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003) (granting motion to quash a non-party subpoena because party issuing subpoena failed to demonstrate relevance of documents).

The party seeking discovery must also demonstrate that the information sought cannot otherwise be obtained from parties to the action or public sources. *See* FED. R. CIV. P. 26(b)(2)(C);

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans Affairs*, 257 F.R.D. 12, 19 (D.D.C. 2009) (quashing subpoena and stating, in relevant part "even modifying the subpoena to seek this limited information is unduly burdensome because of the absence of any showing that the information sought is not available from other sources"); *see also WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 895 (S.D. Ind. 2006) (non-party status is a significant factor when assessing undue burden and quashing subpoena based in part on party's failure to establish that the documents being sought were unavailable from parties to the litigation); *Schaaf v. Smithkline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (same). Unless and until the party attempts to get these documents from other sources—"makes the effort and fails for some reason not attributable to its own fault"—the Court cannot determine whether the subpoena "no matter how limited, is still unduly burdensome because the information sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Dep't of Veterans Affairs*, 257 F.R.D. at 19 (quoting FED. R. CIV. P. 26).

Google seeks to impose undue burden on DCA. First, Google's document requests are extremely broad. Google seeks, for instance, all of DCA's internal documents, internal correspondence, and correspondence with other non-parties to the Underlying Action that in any way *reference or relate* to Attorney General Hood and Google. Considering the breadth of this request, and the fact that Google also seeks that DCA treat its communications with its own lawyers Mike Moore and his law firm as communications directly with Attorney General Hood, the burden on DCA is extreme.

Second, Google's need for DCA to produce these documents is very limited. Indeed, as discussed more fully below, the documents have tangential, if any, relevance to the Underlying Action, which Google itself has framed as a purely legal dispute concerning the Attorney General's

authority. Additionally, the documents and information that Google seeks are available from other sources—most pertinently, for example, Attorney General Hood. Google has done nothing, pursuant to its obligation under Federal Rule of Civil Procedure 26, to demonstrate that the information sought cannot otherwise be obtained from parties to the action or public sources. Failure to do so makes the Motion to Compel premature, as even modifying the subpoena would be unduly burdensome. *See*, *e.g.*, *Dep't of Veterans Affairs*, 257 F.R.D. at 19. And Google has not made such a showing because it cannot do so: There are no documents that would be relevant to the Underlying Action, as discussed below, that are not available from sources other than DCA. DCA should therefore not be burdened with the request.

Third, the vast majority of the documents and information Google seeks are not relevant to the Underlying Action. Here, in Google's own words, the sole issue in the Underlying Action is a legal question turning on interpretation of the Constitution and the Communications Decency Act. Internal documents and communication at DCA regarding Attorney General Hood and Google or communications with other non-parties to the Underlying Action regarding the same does not and cannot inform this legal question.

Google claims that the documents and information it seeks from DCA are potentially relevant because they may demonstrate bad faith on the part of Attorney General Hood. With respect, there is no basis for Google's assertion. An internal email at DCA discussing its desire that Attorney General Hood pursue Google for Google's possible criminal acts—even assuming, *arguendo*, that such an email existed—in no way informs the mental state or motivations of Attorney General Hood. Google points to media reports and improperly groups the "Subpoenaed Parties" together when describing its claims regarding DCA's participation in an anti-Google plot. *See* MTC, at 11-12. But conjecture and broadly grouping DCA with others does not justify any

13

claim of the relevancy of DCA's documents. Finally, Google argues that DCA's documents and information may inform the scope of Attorney General Hood's civil investigative demands for purpose of Google's Fourth Amendment claim. Here, again, Google is inappropriately trying to "roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." *Coleman*, 275 F.R.D. at 37. Google has "no need of a matter not relevant to the subject matter involved in the pending action," and Google's attempt to shoehorn its need into the mental state or credibility of Attorney General Hood or the form of Attorney General Hood's demands is a bridge too far. *See Id.* (citations and internal quotations omitted).

Google, itself, grants that there must be a "proper and logical basis" for the relevancy of documents sought to be tied to their potential use. *See* Memorandum of Google in Support of Motion for a Protective Order at 10, *Google, Inc. v. Attorney General Hood*, No. 14-cv-981 (June 8, 2015). Google also understands that it must demonstrate the potential relevance of the documents and information,[24] but fails to satisfy that burden. Google conclusorily asserts that an internal communication at DCA could inform Attorney General Hood's motivation, but simply saying so is not sufficient to satisfy Google's burden to demonstrate the relevance of what it seeks. *See N. Carolina Right to Life*, 231 F.R.D. at 52; *Night Hawk*, 2003 WL 23018833, at *8. To the extent Google seeks to discover documents and information that would potentially be relevant to this tangential element of the Underlying Action, the documents DCA has pledged to produce—namely its communications with Attorney General Hood and his office—is all and everything that

---

[24] *See, e.g.*, Google's Opposition to the Government's Motion to Compel at 3, *Gonzales v. Google*, No. 6-mc-80006-JW (N.D. Cal. Feb. 17, 2006) (citing *Echostar Commc'n Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998), for the proposition that the requesting party "bears the burden of establishing relevance"); *id.* at 5 (citing *Nicholas J. Murlas Living Trust v. Mobil Oil Corp.*, 1995 WL 124186, at *5 (N.D. Ill. Mar. 20, 1995), and stating that court denied a "motion to compel in part since, inter alia, plaintiff failed to articulate a coherent theory which would explain how the requested information was relevant").

Google could use for that purpose. Finally, to provide intrusive discovery of non-parties every time there is any allegation of *mens rea* or bad faith by a party to an underlying litigation would defeat in almost every case the protections that non-parties are afforded under the Federal Rules of Civil Procedure. Such a position is untenable.

This is because the Court has a general duty to quash or modify the Non-Party Subpoena due to DCA's status as a non-party. FED. R. CIV. P. 45(c); *Call of the Wild Movie*, 770 F. Supp. 2d at 354-55; *Wyoming*, 208 F.R.D. at 452-53; *N. Carolina Right to Life*, 231 F.R.D. at 51; *Fears*, 2004 WL 719185, at *1; *Eisemann*, 1998 WL 164821, at *2. Under the balancing test between the need for the discovery versus the burden imposed, the fact that DCA is a non-party shifts the scales toward quashing or modifying the subpoena. This is particularly true where, as here, intrusive and extensive discovery could deter parties from participating as amici. *See N. Carolina Right to Life*, 231 F.R.D. at 51-52 (holding that plaintiff bringing challenge to constitutionality of state campaign finance laws was not entitled to compel production from non-parties, including amici).

With the foregoing in mind, and considering Google's failure to meaningfully meet and confer or in any way compromise regarding its onerous and wide-ranging requests, DCA maintains that its responses and objections continue to outline its positions vis-à-vis the Non-Party Subpoena. Further, DCA agrees that its direct correspondence with Attorney General Hood and his office could be potentially relevant to the Underlying Action. DCA is prepared to produce these documents within its possession, as previously indicated to Google. Other documents and information—such as internal documents and communications that were not to or from Attorney General Hood or his office—are either privileged, irrelevant to the Underlying Action, or their tangential relevancy is overwhelmed by the burdens for DCA to produce as well as Google's

ability to get the same documents and information elsewhere. The Non-Party Subpoena should be

quashed or modified to reflect this reasonable position as well as the rights of DCA as a non-party.

### III.   THE COURT SHOULD AWARD DCA ITS FEES TO OPPOSE GOOGLE'S MOTION TO COMPEL.

Under Federal Rule of Civil Procedure 37(a)(5)(B), "[i]f the motion [to compel] is denied,

the court . . . ***must***, after giving an opportunity to be heard, require the movant, the attorney filing

the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred

in opposing the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(B) (emphasis added);

*see also D.L. v. District of Columbia*, 251 F.R.D. 38, 49 (D.D.C. 2008) ("Under Rule 37, the

district court has broad discretion to impose sanctions for discovery violations, and to determine

what sanctions to impose."). "But the court must not order this payment if the motion was

substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P.

37(a)(5)(B). Additionally, even if the Court grants in part the Motion to Compel, Federal Rule of

Civil Procedure 45(c)(2)(B) provides "when a district court compels production by a non-party the

court 'shall protect' that person from 'significant expense resulting from the inspection and

copying commanded.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)

(citation omitted). When Rule 45 was amended in 1991, the advisory committee notes made clear

that the "changes were intended 'to enlarge the protections afforded persons who are required to

assist the court'" by making fee shifting mandatory. *Id.* (citing FED. R. CIV. P. 45, advisory

committee notes). Under Rule 45, "the court ***must protect*** the non-party by requiring the party

seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"

*Id.* (emphasis added).

Here, DCA has incurred significant attorneys' fees and costs to respond to Google's

Motion to Compel, all of which was premature and unnecessary. As stated, Google met-and-

conferred with DCA *one time*, and failed in good faith to engage with DCA as DCA attempted to resolve significant open issues. Instead, and far from "substantially justified," Google involved the Court and continues to ask for a huge set of documents that are either largely irrelevant to the Underlying Action or privileged. The Court should quash or modify the Non-Party Subpoena and award DCA its reasonably attorneys' fees and costs to oppose the Motion to Compel. To the extent the Court deems it reasonable for DCA to comply with the Non-Party Subpoena, DCA respectfully requests that it be awarded its attorneys' fees and costs to do so.

## CONCLUSION

For the foregoing reasons, Google's Motion to Compel should be denied, with reasonably attorneys' fees and costs to DCA, and the Non-Party Subpoena should be quashed or modified.


June 15, 2015                                    MASSEY & GAIL LLP


                                         By:  /s/  Eli J. Kay-Oliphant_____

                                         Jonathan S. Massey (D.C. Bar No. 457593)
                                         Eli J. Kay-Oliphant (D.C. Bar No. 503235)
                                         1325 G Street, N.W.
                                         Suite 500
                                         Washington, DC  20005

                                         *Attorneys for Non-Party*
                                         *Digital Citizens Alliance*