**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GOOGLE, INC., | Case No. 15-mc-707-JEB-DAR |
| *Petitioner,* | Case in Other Court: No. 3:14-cv-981-HTW-LRA (S.D. Miss.) |
| v. | Judge James E. Boasberg |
| DIGITAL CITIZENS ALLIANCE, ET AL., | Magistrate Judge Deborah A. Robinson |
| *Respondents.* | |

**<u>MEMORANDUM OF THE MPAA AND JENNER & BLOCK
OPPOSING PETITIONER GOOGLE INC.'S
RULE 45 MOTION TO TRANSFER</u>**

David A. Handzo
JENNER & BLOCK LLP
1099 New York Avenue NW, Ste. 900
Washington, DC 20001
Tel. (202) 639-6000
Fax (202) 639-6060
dhandzo@jenner.com

*Counsel for Respondents Motion Picture
Association of America, Inc.*
and *Jenner & Block LLP*

Norman Hirsch
Christopher Tompkins
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel. (312) 222-9350
Fax (312) 527-0484
nhirsch@jenner.com
ctompkins@jenner.com

*Counsel for Respondent Jenner & Block
LLP*

Jeremy Creelan
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10002-3908
Tel. (212) 891-1600
Fax (212) 891-1699
jcreelan@jenner.com

*Counsel for Respondent Motion Picture
Association of America, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

    A.    Google's pending motion to compel in Mississippi is not an "exceptional circumstance." ........................................................................................... 4

    B.    The Fact that the MPAA and Jenner Assert A Relevance Objection Is Not An "Exceptional Circumstance" ............................................................... 8

    C.    Google's Campaign Of Serving Harassing Subpoenas In Numerous Jurisdictions Is Not An "Exceptional Circumstance." ........................................ 10

    D.    The Sophistication of MPAA and Jenner Is Not An "Exceptional Circumstance." ...................................................................................... 12

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES[*]

**CASES**

*Agincourt Gaming, LLC v. Zynga, Inc.*, No. 2:14-cv-708, 2014 WL 4079555 (D. Nev. Aug. 15, 2014) ...........................................................................................................10, 13

\*CMB Expert LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840 (N.D. Tex. May 27, 2014).......................................................................................................3, 8, 13

*Federal Home Loan Mortgage Corp. v. Deloitte & Touche LLP*, No. 15-mc-568, __ F. Supp. 3d __, 2015 WL 3413540 (D.D.C. May 28, 2015)..........................................9

*FTC v. A+ Financial Center, LLC*, No. 1:13-mc-50, 2013 WL 6388539 (S.D. Ohio Dec. 6, 2013) ...........................................................................................................8

\*Garden City Employees' Retirement System v. Psychiatric Solutions, Inc.*, No. Misc. A. 13-238, 2014 WL 272088 (E.D. Pa. Jan. 24, 2014)...........................................7, 13

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. CV 14-MC-0538, 2014 WL 4954368 (D.D.C. Oct. 3, 2014)...................................................................................9, 13

\*Music Group Macao Commercial Offshore Ltd v. Does*, No. 14-mc-80328-LB, __ F. Supp. 3d __, 2015 WL 930249 (N.D. Cal. Mar. 2, 2015) .......................................13

*In re Subpoena to Kia Motors America, Inc.*, No. SACV 14-315 JLS (RNBx), 2014 WL 2118897 (C.D. Cal. Mar. 6, 2014) .......................................................................13

\*Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405 (N.D. Ala. 2014)................8

*XY, LLC v. Trans Ova Genetics, L.C.*, No. 1:14-mc-778, __ F.R.D. __, 2014 WL 4437728 (D.D.C. Sept. 10, 2014) ..................................................................................9, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 45(a)(2)...........................................................................................................3

Fed. R. Civ. P. 45(d)(2)(B)(i) ...............................................................................................1, 3

Fed. R. Civ. P. 45(f)...............................................................................................................1, 3

Fed. R. Civ. P. 45 Advisory Committee Notes, 2013 Amendments...........................................1, 4

Stephanie Green, *Google's New Digs in DC Opens to Senators, Dogs*, Bloomberg (July 16, 2014), *available at* http://www.bloomberg.com/news/articles/2014-07-16/google-s-new-digs-in-dc-opens-to-senators-dogs ..............................................................14

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

Brody Mullins, *Google Makes Most of Close Ties to White House*, Wall St. J. (Mar. 24, 2015), *available* at http://www.wsj.com/articles/google-makes-most-of-close-ties-to-white-house-1427242076...........................................................................................................14

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2451 (3d ed. Supp. 2015) ...........................................................................................................................4

## INTRODUCTION

Third parties the Motion Picture Association of America Inc., ("MPAA") and Jenner & Block LLP ("Jenner") hereby respectfully oppose Google, Inc.'s Rule 45(f) Motion to Transfer.

Having dragged eight third parties into its dispute with Attorney General Hood via subpoenas and Rule 45 Motions to Compel, Google now seeks to compound the burden by forcing those third parties to litigate Google's pending motions to compel in Mississippi,[1] where none of the third parties are located.  But this District is "the district where compliance [with the subpoena] is required" under Rule 45(d)(2)(B)(i), and therefore is the proper venue for Google's Motions to Compel.  No "exceptional circumstances" – as required by Rule 45(f) – justify a transfer from the venue designated by the Federal Rules.  To the contrary, the discovery dispute in this case is straightforward, is collateral to the issues being litigated in Mississippi, and poses no risk of interference with the Mississippi litigation.  Moreover, this Court's "prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* Advisory Committee Notes, 2013 Amendments, Subsection (f) (hereinafter "Advisory Comm. Notes").  The MPAA and Jenner have a recognized interest "in obtaining local resolution" of Google's motions to compel.  *Id.*  The Court therefore should deny Google's motion to transfer.

## STATEMENT OF FACTS

The background of this subpoena-related dispute has already been described in detail in the MPAA's and Jenner's Memorandum Opposing Petition Google, Inc.'s Rule 45 Motions To Compel Compliance With Subpoenas, and is not repeated in full here.  To summarize, however,

---

[1] Google has filed motions to compel and transfer motions against seven of the eight third parties.  The eighth – the law firm of Orrick, Herrington & Sutcliffe LLP – may have escaped thus far only because its subpoena was served later than the other seven and Google has not yet gotten around to filing a motion to compel.

after years of unfruitful efforts to obtain answers to questions regarding consumer protection concerns, Mississippi Attorney General Jim Hood[2] served Google with a subpoena pursuant to his authority under Mississippi law on October 27, 2014.  MS Dkt. 17-30, Exh. 30.[3]  In response, Google sued Attorney General Hood in December 2014 in the U.S. District Court for the Southern District of Mississippi, seeking a temporary restraining order and a preliminary injunction.  MS Dkt. 1, 2.  On March 2, 2015, the district court granted Google's motion for a temporary restraining order and preliminary injunction.  MS Dkt. 82.

On March 13, 2015, Google served subpoenas, issued by the U.S. District Court for the Southern District of Mississippi, on third parties MPAA and Jenner, requiring compliance in the District of Columbia.[4]  MPAA and Jenner have produced the responsive documents in their possession that were sent to or received from Attorney General Hood prior to the filing of the complaint, with the exception of a handful of documents discussed below.  Nevertheless, Google filed motions to compel on June 1, 2015 (Dkt. Nos. 4, 5), seeking additional documents that Attorney General Hood never saw, including confidential and privileged documents exchanged between MPAA and its counsel at Jenner.[5]  Google's stated theory is that the MPAA and Jenner

---

[2] References hereinafter to "Attorney General Hood" shall include the Attorney General and members of the Mississippi Attorney General's Office.

[3] All citations hereinto "MS Dkt." refer to the docket in *Google Inc. v. Hood*, Case No. 3:14-cv-00981-HTW-LRA (filed S.D. Miss. Dec. 19, 2014).

[4] Declaration of Michael H. Rubin to Google's Motion to Compel ("Rubin Decl.") ¶ 2, Exhibits ("Exhs.") 1-2.

[5] MPAA and Jenner made it clear, prior to the date Google filed its motions to compel, that they would shortly be producing such documents.  *See* Rubin Decl. ¶ 19, Exh. 51 (May 29, 2015 Jenner Letter to Michael Rubin) ("I write simply to note that it is our intention to produce in the near future the categories of documents not subject to our relevance objections, your brief arguments for the relevance of other categories having struck us as entirely unpersuasive."); *Id*. ¶ 17, Exh. 45 (May 28, 2015 MPAA Letter to Michael Rubin) ("As we have repeatedly emphasized, in a good faith effort to resolve our objections without court involvement, MPAA will produce responsive, non-privileged and not otherwise protected communications to which

"directly influenced the misconduct by AG Hood,"[6] but Google cannot explain how documents not exchanged with, and thus never seen by, Attorney General Hood could possibly "directly influence" him.  Nor can Google explain why such "influence" would matter, even if it existed. Indeed, the judge presiding over the Mississippi case has observed that "Google constantly has stated in its papers that this action seems to have been pushed by the Hollywood industry" but "I can't think of why it would be germane to a ruling by the court."  MS Dkt. 83 at 73 (PI Hearing Transcript).

Google filed its Rule 45(f) Motion to Transfer on June 4, 2015.

## ARGUMENT

Federal Rule of Civil Procedure 45 states that while subpoenas are *issued* from the "court where the action is pending" (*i.e.*, in the Southern District of Mississippi), they are *enforced* by bringing a motion to compel in "the district where compliance is required" (*i.e.*, in this Court). Fed. R. Civ. P. 45(a)(2), (d)(2)(B)(i).  Rule 45(f) provides a narrow exception to that principle:  a court may transfer a motion to compel discovery to the issuing court only in "exceptional circumstances" unless the non-party consents.  Fed. R. Civ. P. 45(f).  The party seeking the transfer—here, Google—bears the burden of showing that "exceptional circumstances" exist. *See* Advisory Comm. Notes.  "The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."  *Id.*; *CMB Expert LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840, at *1 (N.D. Tex. May 27, 2014).  The district court where compliance is required therefore must rule on a motion to compel "in all but the rarest cases."

---

Attorney General Hood or members of his Office were parties that we locate in the files of MPAA employees.").

[6] Memorandum in Support of Google Inc.'s Rule 45(f) Motion to Transfer ("Mot."), Dkt. 9 at 1.

9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2451, 97-98 (3d ed. Supp. 2015).

Google has not established that this is one of those "rarest cases." *Id.* To the contrary, Google's arguments would transform every case into an "exceptional case," eviscerating the deliberate policy choice in Rule 45 that local resolution of third-party subpoenas should be the norm rather than the rare exception. This Court is well-positioned to decide the limited disputes regarding Google's motions to compel, which would in no way affect—much less "disrupt"—the Mississippi Court's "management of the underlying litigation." Advisory Comm. Notes. A transfer to the Mississippi court would only compound the undue burdens that Google already has imposed on the MPAA and Jenner, depriving them of "local resolution of the motion." *Id.*

A.    <u>Google's pending motion to compel in Mississippi is not an "exceptional circumstance."</u>

Google first contends that the motions should be transferred because it has filed a motion to compel against Attorney General Hood in Mississippi that supposedly implicates many of the same issues raised in its motions against the MPAA and Jenner in this Court. Mot. at 1, 3, 5, 8. That is entirely wrong. There is no material overlap between the Mississippi motion and the motions pending here.

With respect to the Mississippi motion to compel, as referenced in MPAA's and Jenner's Opposition to Google's Motion to Compel, on April 10, 2015, the district court in Mississippi directed the Attorney General to produce five categories of documents and a privilege log by April 15. MS Dkt. 94. The Attorney General did so, withholding certain of the requested documents on the basis of the attorney-client privilege, attorney work-product, and the common-interest doctrine. Google challenged the Attorney General's assertions of privilege. *See* MS Dkt. 100. Pursuant to a May 19 hearing, the district court then undertook an *in camera* review of

4

the documents at issue, which review is ongoing as of this writing.  *See* MS Dkt. (Minute Entry of May 19, 2015).

The documents at issue in the Mississippi motion to compel against the Attorney General are *not* at issue in the motions to compel pending against the MPAA and Jenner in this Court. There are certain categories of documents the MPAA and Jenner have declined to produce, and those documents are the subject of the motions to compel before this Court.  But the categories of documents not produced are those that were never seen by Attorney General Hood or his staff. Obviously, these documents are not at issue in the discovery dispute between Google and the Attorney General, because the Attorney General by definition does not possess such documents. In short, the MPAA and Jenner's discovery dispute with Google involves only documents that Attorney General Hood did *not* see, while the only documents at issue in the discovery dispute between Google and Attorney General Hood in Mississippi are documents that the Attorney General plainly *did* see because they are in his possession.

Further, none of the arguments asserted by the MPAA and Jenner in this proceeding are likely to arise in any discovery dispute between Google and Attorney General Hood in Mississippi:

> ➢ *First*, to the extent the MPAA and Jenner argue that documents the Attorney General never saw are irrelevant to the Mississippi litigation, that issue cannot arise and be resolved in the motion practice between the Attorney General and Google because the Attorney General does not control or possess any such documents.

> ➢ *Second*, the MPAA and Jenner contend that Google's motion would interfere with the attorney-client relationship between MPAA and Jenner.  Because the MPAA

and Jenner already have made clear that they assert no attorney-client privilege or other protection with respect to documents they shared with the Attorney General, the attorney-client privilege issues that the MPAA and Jenner raise before this Court simply would not arise in a dispute between Google and the Attorney General in Mississippi.

➢ *Third*, the MPAA and Jenner contend that Google's motion before this Court would result in litigation over the First Amendment privilege. Yet this argument could not arise in a dispute between Google and the Attorney General in Mississippi because Attorney General Hood, as a state official, cannot and does not claim that he has a First Amendment right that protects documents in his possession in his official capacity.

There is only one small area of potential overlap between the Mississippi motion to compel and the motions pending here, but that overlap does not help Google in seeking to transfer these issues to Mississippi. At Attorney General Hood's request, the MPAA and Jenner withheld from production a handful of documents exchanged with the Attorney General (and thus within the category of documents that the MPAA and Jenner otherwise agreed to produce) because they are the same or similar to documents over which the Attorney General has asserted privilege objections, and which are currently being reviewed *in camera* by the Mississippi court in response to Google's Mississippi motion to compel. The MPAA and Jenner are not themselves asserting any relevance or privilege objections to producing those documents. Rather, they are withholding those documents simply because producing them would effectively moot the Attorney General's privilege assertions and deny the Mississippi court the opportunity

to pass judgment on them.  If the Mississippi court grants Google's motion to compel, the MPAA and Jenner will produce those documents without objection.

Thus, the MPAA and Jenner are not seeking to re-litigate any of the privilege issues currently being considered by the Mississippi court; nor would ruling on Google's pending motions to compel require this Court to consider those privilege issues.  The Mississippi court will decide the Attorney General's privilege claims and resolve the fate of this category of documents.  Because Jenner and the MPAA will produce them if the Attorney General is unsuccessful in asserting privilege, this small category of documents provides no basis for a transfer.

There is no evidentiary or analytical overlap between the Mississippi motion and the motions in this Court,[7] and the pending motion to compel in Mississippi provides no colorable basis to transfer Google's motion.  *See Garden City Emps.' Ret. Sys. v. Psychiatric Solutions, Inc.*, No. Misc. A. 13-238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014) (transfer proponent "has not shown the [issuing] court has ruled on discovery issues similar to the issues raised by the instant motion").  Even if there were some tangential relationship between the Mississippi

---

[7] Google points to Judge Wingate's resolution of a *procedural* question about when discovery opened as evidence that the *substance* of the Motions to Compel should be transferred wholesale to Judge Wingate.  *See* Mot. at 8 n.8.  That fact is wholly irrelevant.  Because the Subpoenas issued from Judge Wingate's court, it is only natural he should resolve the parties' question about the time in which to respond.  That question is very different from questions regarding the *scope* of the subpoenas, which this Court is equally poised to answer.  Indeed, discovery schedules are *always* set by the transferee court; that simple fact cannot be a basis for transfer.  Google also contends that transfer is appropriate because the Mississippi Court will have to resolve a dispute as to whether the Subpoenas were timely served.  *See id.*  This is a red herring.  Although the MPAA and Jenner contended that the Subpoenas were served too early – before discovery opened – they nonetheless provided objections to Google within 14 days of service, provided supplemental objections and responses on April 24, and engaged in a meet and confer on the schedule proposed by Google.  *See* Memorandum of Law in Opposition to Google Inc.'s Rule 45 Motion to Compel, Dkt. 17 at 8-11 ("Opp. to Motion to Compel").  Thus, there is no dispute for this Court or the Mississippi Court to resolve regarding the timeliness of the Subpoenas or the Subpoenaed Parties' objections and responses thereto.

and D.C. motions, that would be insufficient to establish the required "extraordinary circumstances" justifying transfer.  *See CMB Expert LLC*, 2014 WL 2197840, at *2 (finding "tangentially related motions" pending before issuing court was not an exceptional circumstance warranting a Rule 45(f) transfer).[8]

   B.   <u>The Fact that the MPAA and Jenner Assert A Relevance Objection Is Not An "Exceptional Circumstance"</u>

   Google next argues that the MPAA and Jenner's relevance objections constitute an "exceptional circumstance" justifying transfer.  That argument fails.  Nearly every opposition to a motion to compel will involve relevance issues.  If the assertion of a relevance objection is sufficient to send a motion to compel packing back to the issuing court, then there would rarely be a motion to compel that would *not* be transferred back to the issuing court, and Rule 45's requirement that such transfers are appropriate only in "exceptional circumstances" would be eviscerated.  *See Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala. 2014) (holding that although "some of the issues that will arise in resolving the motions to quash will also arise in the underlying litigation, because [the] motion in particular raises concerns of relevance . . . such overlap is an insufficient reason, standing alone, to warrant transfer of the motions").  Indeed, Google's argument would open the door to precisely the type of harassment of non-parties that Rule 45 was designed to avoid:  a party could serve burdensome subpoenas upon non-parties with only a tangential relationship to the litigation, and

---

[8] The cases Google cites in favor of transfer "when the issuing court is already considering related issues in another motion to compel pending before it," Mot. at 7-8, are inapposite.  For example, in *FTC v. A+ Financial Center, LLC*, No. 1:13-mc-50, 2013 WL 6388539 (S.D. Ohio Dec. 6, 2013), the court found "exceptional circumstances" under Rule 45(f) where a motion to compel against the same non-party seeking similar items, and a motion for a protective order by that same non-party, were already pending before the court handling the underlying litigation.  *Id.* at *3.

upon assertion of relevance objections, argue that it is exactly that objection which provides the basis to transfer the motion to compel to the issuing court hundreds of miles away.

Nor do MPAA and Jenner's relevance objections raise complex questions that could constitute "exceptional circumstances" warranting transfer.  The Mississippi litigation is not a complex patent or antitrust case in which extraordinary judicial effort is necessary to understand the causes of action and relevance objections.  Google's First Amendment retaliation claim is extremely simple:  Google claims that its search engine results constitute protected speech, and Attorney General Hood retaliated against Google for that speech.  The MPAA and Jenner's relevance objection is straightforward:  documents that Attorney General Hood never saw are irrelevant to Attorney General Hood's state of mind.  Resolving that objection will require "a mere relevancy determination" without "nuanced legal analysis based on a full understanding of the [u]nderlying [a]ction," well within the ken of this Court.  *Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP*, No. 15-mc-568, __ F. Supp. 3d __, 2015 WL 3413540, at *2 (D.D.C. May 28, 2015).[9]

The cases cited by Google (Mot. 9-10) present precisely the types of "exceptional circumstances" that are absent here.  Google cites a case in which the issuing court had spent four years studying and comprehending the underlying case, *see Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. 14-mc-538, __ F.R.D. __, 2014 WL 4954368, at *4 (D.D.C. Oct. 3, 2014); a case in which the subpoenaed non-party was in the process of purchasing a party to the underlying action, *see XY, LLC v. Trans Ova Genetics, L.C.*, No. 1:14-mc-778, __ F.R.D. __, 2014 WL 4437728, at *1 (D.D.C. Sept. 10, 2014); and a case in which the district court was presiding over

---

[9] As the MPAA and Jenner point out in their Memorandum of Law in Opposition to Google Inc.'s Rule 45 Motion to Compel, issues of state of mind also should not be relevant at all to Google's other arguments, including preemption.  *See* Opp. to Motion to Compel, at 14, 29.

"at least three other cases brought by the same plaintiff raising the same claims against other defendants," *Agincourt Gaming, LLC v. Zynga, Inc.*, 2:14-cv-708, 2014 WL 4079555, at *7 (D. Nev. Aug. 15, 2014).  Google identifies no analogous "exceptional circumstances" here, relying solely on the relevance objections raised by MPAA and Jenner that cannot support a motion to transfer.

C.  <u>Google's Campaign Of Serving Harassing Subpoenas In Numerous Jurisdictions Is Not An "Exceptional Circumstance."</u>

Google observes that it has served eight subpoenas in the underlying action:  four in this District, three in the Southern District of New York, and one in the Northern District of California.  Mot. at 10.  It speculates that multiple courts might render inconsistent rulings, *see id.* at 1, 7, 11, and therefore tries to force all non-parties to go to the Southern District of Mississippi.  Google effectively asks this Court to reward it for the sheer number of burdensome and overbroad subpoenas it issued seeking irrelevant information.  The mere issuance of subpoenas followed by motions to compel in multiple districts is not, and cannot, be sufficient to justify a transfer to the district where the underlying action is pending.  This Court should not allow Google (and, in the future, other litigants) to create "exceptional circumstances" simply by multiplying the number of subpoenas issued and pursuing motions to compel in multiple judicial districts.

That is particularly true here, where the need for multiple subpoenas (or any subpoenas at all) is dubious at best.  Google itself has stated that its Mississippi litigation involves "a legal question, squarely answered by the Constitution and the Communications Decency Act ('CDA')," and "what little fact development needs to be done pertains primarily to the Attorney

General's own conduct and motivation."[10]  Discovery into the Attorney General's "conduct and motivation" logically ought to be directed at the Attorney General, rather than third parties.  And surely there was no need to subpoena the MPAA, *and* its counsel (Jenner), *and* three of its members (Twenty-First Century Fox, NBCUniversal Media, and Viacom—as parent of member Paramount Pictures),[11] *and* the Digital Citizens Alliance ("DCA"), as well as another law firm, Orrick, Herrington & Sutcliffe LLP.  Google told the Mississippi court that it anticipated only "targeted" discovery (MS Dkt. 84 at 5, 7) (Hearing Transcript), but the fact that Google has now taken aim at so many different targets suggests a tactical ploy to create arguments for transfer, rather than any real need for the discovery.

In any event, Google has not explained why the fact that there are motions pending in two districts establishes any risk of inconsistent rulings that would somehow interfere with the Mississippi court's ability to resolve Google's claims against the Attorney General.  Neither this Court nor the District Court for the Southern District of New York will be making any ruling on the substance of Google's Mississippi claims.  And Google's notion that there is some risk of inconsistent discovery rulings ignores the fact that Google's New York subpoenas are different from its subpoenas issued to the MPAA, Jenner, and the DCA.  None of the four document requests in the subpoenas in the Southern District of New York appear in the subpoenas Google served on the MPAA, Jenner, and the DCA in the District of Columbia.  *See* Rubin Decl., ¶ 2, Exhs. 1-6.  In some respects the New York subpoenas are broader, in that they seek "all communications with Attorney General Hood," even if they in no way relate to Google, as well as "all communications with any Attorney General's office" that relate to Google, regardless of

---

[10] Declaration of Christopher Tompkins in Opposition to Petitioner Google Inc.'s Rule 45 Motion To Compel Compliance with Subpoena ("Tompkins Decl."), ¶ 8, Exh. 5 at 3, 13 (Google Inc.'s Memorandum in Support of Motion for a Protective Order).

[11] The subpoena recipients technically are affiliates of the entities that are MPAA members.

whether Attorney General Hood was involved in the communication.  *Id.* ¶ 2, Exhs. 3-5 (Request

Nos. 3, 4).  In other respects they are narrower:  the S.D.N.Y. subpoenas do not seek—as Google

has sought from MPAA and Jenner—documents that "relate to or refer to" Google and the

Attorney General.  *See id.* at ¶ 2, Exhs. 1, 2 (Request Nos. 1, 3).  Given the substantial

differences in the scope of the subpoenas, the relevance and burden issues before the Southern

District of New York will be very different from the relevance and burden issues before this

Court.  Moreover, the MPAA and Jenner have asserted First Amendment associational privilege

arguments with regard to internal documents that "relate to or refer to" Google and the Attorney

General.  That argument is irrelevant in New York because Google has not requested such

documents in its New York subpoenas.  In sum, Google entirely whitewashes the differences

between the New York and D.C. subpoenas, and overstates the potential for any inconsistency.

This Court should not countenance Google's attempt to obtain a transfer of its motion to

compel by seeking irrelevant documents in yet another jurisdiction and claiming the prospect of

inconsistent rulings on relevance.  Google's self-created and implausible predictions of judicial

inconsistency do not warrant transfer.[12]

D.    The Sophistication of MPAA and Jenner Is Not An "Exceptional Circumstance."

Finally, Google points to the sophistication of the MPAA and Jenner, and the fact that the

MPAA and Jenner have previously communicated with Attorney General Hood, as

---

[12] Google argues in passing that the "narrow window Judge Wingate afforded for discovery" and
the fact that the Mississippi court "set an expedited discovery period," provide some additional
basis for transferring its motions to compel to the issuing court.  Mot. at 5, 11.  The MPAA and
Jenner disagree that the discovery deadlines set in the Mississippi court are at all relevant to
whether this Court should grant the requested transfer, and note that Google cites no case law to
support its position.  Nor is there any reason to believe that this Court will not resolve the
pending motions as fast or faster than the Mississippi court.  In any event, since the filing of this
motion, Google has requested and received from the Mississippi District Court a thirty-day
extension of discovery in the underlying litigation, mooting any argument about the discovery
clock.  *See* MS Dkt. 130, 133.

circumstances warranting transfer (Mot. 11-12).  But lawsuits involving sophisticated corporations, law firms, and trade organizations are ubiquitous in federal court and are certainly not "exceptional."  *See, e.g.*, *Music Group Macao Commercial Offshore Ltd v. Does*, No. 14-mc-80328-LB, 2015 WL 930249, at *3 (N.D. Cal. Mar. 2, 2015) (refusing to find "exceptional circumstances" in third party subpoena directed to Twitter).[13]

Moreover, sophisticated or not, the MPAA and Jenner would plainly be burdened if Google's motions were transferred to Mississippi.  The MPAA and Jenner have no offices in Mississippi.  Jenner's DC office is located 1.2 miles from the D.C. District Court but 979 miles from the Southern District of Mississippi courthouse.  Courts have routinely recognized the burden of travelling outside one's home district litigation in which they are not even a party as a significant burden under Rule 45.  *See CMB Expert*, 2014 WL 2197840, at *2 (denying transfer under Rule 45(f) from N.D. Tex. for a third party headquartered, based, and having responsive documents in Dallas); *Garden City*, 2014 WL 272088, at *3 (recognizing that forcing a non-party and its counsel to travel out of their home district to address a motion to compel unduly burdens a non-party).  That MPAA and Jenner have previously communicated with Attorney

---

[13] Google nonetheless contends that because the non-parties are national entit[ies] represented by sophisticated counsel, transfer would not impose an undue burden.  Mot. at 12.  However, the cases cited by Google on this point are readily distinguishable.  Google relies primarily on a case in which a California court found that transfer of a motion to compel to North Carolina would not significantly burden the subpoenaed party, Kia Motors, because "Kia is a national automotive company, not an individual California resident, *and Kia's counsel is representing the defendant in the North Carolina action.*"  *In re Subpoena to Kia Motors Am., Inc.*, SACV 14-315 JLS (RNBx), 2014 WL 2118897, at *1 (C.D. Cal Mar. 6, 2014) (emphasis added).  Here, by contrast, counsel to the MPAA and Jenner are not representing a party in the Mississippi Action.  The other cases Google cites rely on *Kia*, but omit any reference that Kia's counsel was representing a party in the underlying litigation.  *Agincourt Gaming LLC*, 2014 WL 4079555, at *8; *XY, LLC*, 2014 WL 4437728, at *2; *Judicial Watch*, 2014 WL 4954368, at *3-4.  Even those cases recognize that whether the subpoenaed party is a "large corporation represented by sophisticated counsel . . . is by no means a dispositive consideration."  *Agincourt Gaming LLC*, 2014 WL 4079555, at *8.

General Hood is no "exceptional circumstance," since virtually every subpoena will involve a non-party that previously communicated with a party to the litigation.[14]   Moreover, it bears repeating that the MPAA and Jenner are producing responsive documents they exchanged with Attorney General Hood.  Google seeks confidential documents that Attorney General Hood never saw, and it is absurd for Google to suggest that the MPAA and Jenner somehow acquiesced to the Mississippi court's hearing a motion to compel to produce such documents.

Indeed, this dispute implicates strong local interests.  One of the reasons for Rule 45's strong preference for resolution of motions to compel in the non-party's home district is the basic legal norm that local disputes should be resolved locally.  That norm applies here with full force.  In this Court, Google – a multinational company with an exceptionally strong presence in Washington, DC[15]—seeks production of confidential MPAA and Jenner documents never seen by Attorney General Hood.  In response, the parties invoke the First Amendment and attorney-client privilege.  Whether an industry association and law firm with a strong presence in Washington, D.C. should be forced to produce their own confidential strategic documents never seen by the Mississippi Attorney General – and whether such disclosure is consistent with the constitutional and common-law rights of those D.C. entities – is a matter of profound interest in D.C.  The letter and spirit of Rule 45 create a powerful presumption that such a dispute should be heard in D.C. court.

---

[14] Jenner and MPAA reiterate their objection to, and reserve all rights regarding, Google's unauthorized use in the current motion practice of leaked privileged documents revealed by the hack of Sony Pictures.  *See* Opp. to Motion to Compel at 10, 23.

[15] *See, e.g.*, Stephanie Green, *Google's New Digs in DC Opens to Senators, Dogs*, Bloomberg (July 16, 2014), *available at* http://www.bloomberg.com/news/articles/2014-07-16/google-s-new-digs-in-dc-opens-to-senators-dogs.  Further evidencing Google's significant presence in this District, it is noteworthy that Google spent $16.8 million on federal lobbying in 2014, second only to Comcast.  *See* Brody Mullins, *Google Makes Most of Close Ties to White House*, Wall St. J. (Mar. 24, 2015), *available* at http://www.wsj.com/articles/google-makes-most-of-close-ties-to-white-house-1427242076.

Additionally, Google has subpoenaed and moved to compel the DCA—a small think tank that operates exclusively in D.C. which unquestionably would face a significant burden if forced to appear in the Mississippi District Court.  Thus, transferring the motions to compel the MPAA and Jenner to the Mississippi District Court would do nothing to avoid Google's supposed concern with multiple jurisdiction deciding its identical motions, since this Court would very likely still maintain jurisdiction to resolve the motion against DCA.

* * *

## CONCLUSION

In short, Google has failed to show that "exceptional circumstances" are present in this case justifying a transfer of its Motions to Compel.  This case presents precisely the type of discovery dispute that the drafters of Rule 45 intended to keep in the court where compliance is required.  Google's tactical maneuvering does not provide the basis to unduly burden third parties and force those parties to travel hundreds of miles to resolve disputes best suited for local consideration.  For the foregoing reasons, the MPAA and Jenner respectfully request that the Court deny Google's Rule 45 Motion to Transfer its Motions to Compel to the Southern District of Mississippi.

Dated: June 22, 2015                              Respectfully submitted,

                                                  /s/ David A. Handzo
                                                  David A. Handzo (D.C. Bar No. 384023)
                                                  JENNER & BLOCK LLP
                                                  1099 New York Avenue NW, Ste. 900
                                                  Washington, DC 20001
                                                  Tel. (202) 639-6000
                                                  Fax (202) 639-6060
                                                  dhandzo@jenner.com

                                                  *Counsel for Respondents Motion Picture*
                                                  *Association of America, Inc. and Jenner &*
                                                  *Block LLP*

Jeremy Creelan
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10002-3908
Tel. (212) 891-1600
Fax (212) 891-1699
jcreelan@jenner.com

*Counsel for Respondent Motion Picture
Association of America, Inc.*

Norman Hirsch
Christopher Tompkins
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
Tel. (312) 222-9350
Fax (312) 527-0484
nhirsch@jenner.com
ctompkins@jenner.com

*Counsel for Respondent Jenner & Block LLP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 22, 2015, a true and correct copy of the foregoing:

1) **MEMORANDUM OF THE MPAA AND JENNER & BLOCK OPPOSING PETITIONER GOOGLE, INC.'S RULE 45 MOTIONS TO TRANSFER**

was filed via electronic court notification with the Clerk's office and served on all

counsel of record as indicated below:

| | |
|---|---|
| Veronica S. Ascarrunz<br>WILSON SONSINI GOODRICH & ROSATI<br>1700 K Street, NW, Fifth Floor<br>Washington, DC 20006 | ☐ Via Hand Delivery<br>☑ Via Electronic Court Notification<br>☐ Via U.S. Mail |
| David M. Kramer<br>Michael H. Rubin<br>WILSON SONSINI GOODRICH & ROSATI<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>*Counsel for Google, Inc.* | ☐ Via Hand Delivery<br>☑ Via Electronic Court Notification<br>☐ Via U.S. Mail |
| Eli Kay-Oliphant<br>MASSEY & GAIL LLP<br>50 East Washington Street<br>Chicago, IL 60602<br>ekay-oliphant@masseygail.com<br>*Counsel for Digital Citizens Alliance* | ☐ Via Hand Delivery<br>☑ Via Electronic Court Notification<br>☐ Via U.S. Mail |

/s/ Micah J. Cogen_____
Micah J. Cogen