# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GOOGLE INC. | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | Case No. 1:15-mc-707-JEB-DAR |
| v. | ) | |
| | ) | Case in Other Court: |
| | ) | No. 3:14-cv-981-HTW-LRA (S.D. Miss.) |
| DIGITAL CITIZENS ALLIANCE, | ) | |
| MOTION PICTURE ASSOCIATION OF | ) | |
| AMERICA, INC., and | ) | |
| JENNER & BLOCK LLP | ) | |
| Respondents. | ) | |
| | ) | |
| | ) | |

## NON-PARTY DIGITAL CITIZENS ALLIANCE'S
## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
## TO GOOGLE INC.'S RULE 45(f) MOTION TO TRANSFER

MASSEY & GAIL LLP
Jonathan S. Massey (D.C. Bar No. 457593)
Eli J. Kay-Oliphant (D.C. Bar No. 503235)
1325 G Street, N.W.
Suite 500
Washington, DC  20005
Email: ekay-oliphant@masseygail.com
Telephone: 202.652.4511
Fax: 312.379.0467

*Attorneys for Subpoenaed Non-Party*
*Digital Citizens Alliance*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT……………………………………………………………….........1

RELEVANT BACKGROUND ..................................................................................................... 3

ARGUMENT ................................................................................................................................ 7

   I.   GOOGLE MUST DEMONSTRATE "EXCEPTIONAL CIRCUMSTANCES" TO
      OVERCOME NON-PARTY DCA'S SIGNIFICANT INTEREST AGAINST
      LITIGATING IN A DISTANT DISTRICT …................................................................... 7

  II.  GOOGLE FAILS TO PRESENT "EXCEPTIONAL CIRCUMSTANCES" TO
      OVERCOME DCA'S INTEREST IN LOCAL RESOLUTION OR JUSTIFY IMPOSING
      UNDUE BURDEN.................................................................................................... 11

CONCLUSION.......................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Agincourt Gaming LLC v. Zynga, Inc.*, No. 14-cv-708-RFB-NJK,
2014 WL 4079555 (D. Nev. Aug. 15, 2014).......................................................... 16, 17

*CMB Expert, LLC v. Atteberry*, No. 3:14-mc-51-B-BN,
2014 WL 2197840 (N.D. Tex. May 27, 2014)......................................................*passim*

*Dagett v. Scott, et al.*, CA No. 15-mc-0065-CMA-MJW,
2015 WL 3407314 (D. Colo. May 26, 2015)........................................................... 9, 12

*Deloitte & Touche LLP v. Federal Housing Finance Agency*,
No. 15-mc-568-RMC, 2015 WL 3413540 (D.D.C. May 28, 2015)........................... 10, 14, 15

*Fed. Deposit Ins. Co. v. Everest Reinsurance Holdings, Inc.*,
13 Misc. 381 (KPF), 2014 WL 260589 (S.D.N.Y. Jan. 23, 2014)........................... 16

*Garden City Employees' Retirement System v. Psychiatric Solutions Inc.*,
No. 13-mc-238, 2014 WL 272088 (E.D. Pa. Jan. 24, 2014).......................... 9, 11, 12

*Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. 14-mc-0538-BAH,
2014 WL 4954368 (D.D.C. Oct. 3, 2014)................................................. 8, 9, 14, 15

*N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49 (D.D.C. 2005) ...................................... 11

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. 15-mc-00099-SI,
2015 WL 2359568 (D. Or. May 18, 2015)................................................................. 8

*Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405 (N.D. Ala. 2014) ............... 7, 9, 12, 16

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 45(a)(2)............................................................................................. 7

FED. R. CIV. P. 45(d)(2)(B)(i) ................................................................................... 7

FED. R. CIV. P. 45(f)................................................................................................. 7

FED. R. CIV. P. 45(f), Advisory Comm. Notes, 2013 Amendment, Subdivision (f)..................... 11

**Other Authorities**

Attorney General Jim Hood's Memorandum Brief in Opposition to Plaintiff Google Inc.'s
Motion for a Protective Order with Respect to Notices of Rule 30(b)(6) Deposition Notices of
Google Inc., *Google Inc. v. Hood*, 14-cv-981-HTW-LRA (S.D. Miss.) (June 16, 2015)........... 6

Brief of *Amici Curiae* Stop Child Predators, the Digital Citizens Alliance, Taylor Hooton
Foundation, and Ryan United in Support of Defendant, *Google Inc. v. Hood*, No. 14-cv-981-
HTW-LRA (S.D. Miss.) (Jan. 22, 2015) ................................................................................. 1

Digital Citizens Alliance, Investigative Reports, *available at*
http://www.digitalcitizensalliance.org/cac /alliance/resources.aspx ........................................... 2

Memorandum of Google in Support of Motion for a Protective Order, *Google Inc. v. Hood*, No.
14-cv-981-HTW-LRA (S.D. Miss.) (June 8, 2015) ............................................................ 6, 13

Order, *Google, Inc. v. Hood*, No. 14-cv-981-HTW-LRA (S.D. Miss.) (March 2, 2015).............. 3

## PRELIMINARY STATEMENT

Digital Citizens Alliance ("DCA"), is a Washington, D.C.-based consumer-focused coalition of organizations, businesses, and Internet experts focused on educating the public and policymakers on the threats faced by people from all walks of life on the Internet. DCA does not do business in Mississippi, and is not a party to the Mississippi lawsuit between Google Inc. ("Google") and the Attorney General of the State of Mississippi James Hood ("Attorney General Hood"), captioned *Google Inc. v. Hood*, No. 3:14-cv-981-HTW-LRA (S.D. Miss.) (the "Underlying Action"). A small, non-profit organization, DCA has offices only in Washington, D.C.

DCA's mission is to inform and to work to protect people from the dangers of and on the internet, such as online crime and scams. DCA also works to make the Internet a safer place by engaging key internet stakeholders: individuals, internet companies, and civic leaders. In the Underlying Action DCA previously filed—with other interested parties—an *amici* brief in support of Attorney General Hood's efforts to learn more about Google's activities.[1] DCA takes issue with Google, and it is completely reasonable to do so, because there is substantial evidence both from the recent past and even now that criminals have leveraged Google platforms such as YouTube in their criminal activity.[2]

---

[1] *See* Brief of *Amici Curiae* Stop Child Predators, the Digital Citizens Alliance, Taylor Hooton Foundation, and Ryan United in Support of Defendant, *Google Inc. v. Hood*, No. 14-cv-981-HTW-LRA (S.D. Miss.) (Jan. 22, 2015) (the "*Amici* Brief").

[2] *See, e.g., id.*, at 7 & n.2 (discussing Google's 2011 agreement to pay $500 million to avoid prosecution after federal authorities and the Rhode Island Attorney General alleged that Google was aiding overseas pharmacies in illegally marketing prescription drugs in the United States) (citing U.S. Department of Justice, Press Release: Google Forfeits $500 Million Generated by Online Ads & Prescription Drug Sales by Canadian Online Pharmacies (Aug. 24, 2011), *available at* http://www.justice.gov/opa/pr/google-forfeits-500-million-generated-online-ads-prescription-drug-sales-canadian-online); *see also id.*, at 8 & n.4 (discussing DCA report on significant content on YouTube regarding buying steroids or other drugs without a prescription, accompanied in some cases by Google-placed advertisements in many cases related to the content of the illegal activity) (citing Digital Citizens Alliance, *Google & YouTube and Evil Doers: Too Close for Comfort*, at 6-9 (June 10, 2013), *available at* http://bit.ly/1yy2cB7; Digital Citizens Alliance, *Digital Weeds: How Google Continues to Allow Bad Actors to Flourish on YouTube*, at 3-5 (Mar. 10, 2014), *available at*

In response to DCA's efforts to educate the public about a myriad of dangers on the internet,[3] to lawfully petition government officials as is its right, and to file the *Amici* Brief in the Underlying Action, Google now brings its fight with Attorney General Hood directly to DCA with a harassing, overreaching subpoena (the "Non-Party Subpoena")—and with the instant motion Google seeks to drag DCA to a Mississippi court, far from its home forum of Washington, D.C. But DCA has legitimate interest in having disputes regarding the Non-Party Subpoena resolved locally, and this Court can easily resolve the straightforward disputes regarding the Non-Party Subpoena while ensuring that DCA, as a non-party,[4] is protected as it should be from the significant undue burden of having to litigate in Mississippi.

In its Motion to Compel, Google inappropriately grouped DCA with other non-parties and failed to satisfy its burden to demonstrate the relevance of DCA's documents and information to the Underlying Action.[5] In similar fashion, Google now in its Motion to Transfer fails to satisfy its burden to demonstrate that there are "exceptional circumstances" that justify forcing a small non-profit from Washington, D.C. to litigate in the forum of Google's choosing. Federal Rule of Civil Procedure 45 was written to protect non-parties such as DCA; pursuant to that Rule, this Court should refuse to countenance Google's retaliation and harassment and should deny Google's Motion to Transfer.

---

http://bit.ly/1zA1ULD; Digital Citizens Alliance, *Better at Any Cost: The Dangerous Intersection of Young People, Steroids, and the Internet*, at 7–14 (Oct. 8, 2013), *available at* http://bit.ly/1xEYthb); *see also, generally, id.*, at 27-31 and nn. 13-17.

[3] *See, e.g.*, Digital Citizens Alliance, Investigative Reports, *available at* http://www.digitalcitizensalliance.org/cac /alliance/resources.aspx (last visited June 18, 2015); *see also supra* note 2.

[4] *See, generally*, Non-Party Digital Citizens Alliance's Memorandum of Points and Authorities in Opposition to Google Inc.'s Motion to Compel, at 10-16, D.I. 13 (June 15, 2015) ("DCA's Opposition to Google's Motion to Compel").

[5] *See id.*

## RELEVANT BACKGROUND

Relevant background is set out in detail in DCA's Opposition to Google's Motion to Compel,[6] although a few points are uniquely relevant to the instant motion. First, Google served the Non-Party Subpoena prematurely. On March 2, 2015, Judge Wingate entered an Order in the Underlying Action which in relevant part stated that after Judge Wingate published a subsequent detailed ruling Attorney General Hood "shall have 14 days to file his answer to the Complaint," and "the parties shall be permitted 90 days for discovery from the date of the filing of [Attorney General Hood's] answer . . . ." Order, at 3-4, *Google, Inc. v. Hood*, No. 14-cv-981-HTW-LRA (S.D. Miss.) (March 2, 2015 (the "March 2 Order").[7] Therefore, when Google served DCA with the Non-Party Subpoena, it was before discovery began in the Underlying Action. On March 24, 2015 and March 30, 2015, DCA wrote to Google and said the Non-Party Subpoena was premature and that DCA would deem the Non-Party Subpoena served, per the March 2 Order, when Attorney General Hood served his answer.[8] Google did not respond or object to either of DCA's letters and DCA relied upon the March 2 Order as well as Google's silence in response to DCA's stated approach.

Second, Google then attempted to impose an arbitrary discovery deadline. Attorney General Hood filed his answer on April 10, 2015 (thus opening discovery in the Underlying Action—per the March 2 Order—on that date). Judge Wingate subsequently filed an Order on April 10, 2015 (the "April 10 Order")[9] that stated in relevant part and in contradiction with the March 2 Order that "[d]iscovery commenced for the parties and third parties on March 2, 2015." Judge Wingate's April 10 Order thus appeared to retroactively modify the schedule set forth in the

---

[6] *See id.*, at 3-7.
[7] Exhibit ("Exh.") 1 to the Declaration of Eli J. Kay-Oliphant (June 15, 2015) (the "Kay-Oliphant Decl."), filed with DCA's Opposition to Google's Motion to Compel.
[8] Kay-Oliphant Decl. Exh. 3, 4.
[9] Kay-Oliphant Decl. Exh. 6.

March 2 Order. Apparently, prior to that date, Google went to the Underlying Action court to "reconfirm . . . that discovery had in fact opened on March 2," before the date that discovery opened for the parties. *See* Google's Memorandum of Points and Authorities in Support of its Rule 45(f) Motion to Transfer ("Google's Motion to Transfer"), at 4 (citation omitted).

DCA had no notice of and was not present at the hearing before Judge Wingate that resulted in the April 10 Order, and Google did not offer any explanation for the retroactive modification to the March 2 Order's schedule.[10] Instead, Google on April 10, 2015 sent a letter to DCA that in relevant part imposed an arbitrary deadline for DCA to provide responses and objections to the Non-Party Subpoena one week from that date, on April 17, 2015.[11] DCA wrote to Google on April 17, 2015 and explained that DCA had relied upon both the March 2 Order and Google's failure to object to the approach outlined in DCA's prior letters and that DCA would therefore provide responses and objections to the Non-Party Subpoena within the 14-day period prescribed by Federal Rule of Civil Procedure 45.[12] On April 24, 2015, DCA timely provided its full responses and objections.

Third, Google has demonstrated its determination to litigate. Google has conducted only *one* meet-and-confer session with DCA. In connection with that session, DCA in good faith provided Google information about its substantial efforts to collect and review documents, provided information regarding the status of its review of documents and DCA's investigation of its privilege claims, pledged to produce subject to proper scoping and privilege limitations the only set of documents that could conceivably be (although likely they are not) relevant to the

---

[10] *See id.*

[11] Kay-Oliphant Decl., Exh. 7.

[12] Kay-Oliphant Decl., Exh. 8. Note that Google alleges that DCA "ignor[ed]" an extended deadline given to them by Google." Google's Motion to Transfer, at 4. That is wrong. As stated, DCA sent two (2) letters outlining its planned approach and the fact of its reliance on the March 2 Order and then in response to Google's arbitrary deadline DCA sent *another* letter explaining again its approach. Rather than "ignoring," DCA directly addressed the issue three times.

Underlying Action, provided the list of terms DCA had used to search through its documents, pledged to investigate the factual and legal basis for its claim of attorney-client privilege over communications with Mike Moore and his law firm based on evidence that Google only recently provided, diligently reviewed documents, and promised to consider further Google's relevancy arguments. Despite DCA's good faith and willingness to continue to meet and confer regarding numerous substantial unresolved issues, only *six business days after the sole meet-and-confer* Google demanded that DCA withdraw all its objections and produce *everything* Google requested by close of business *the next day*.[13] DCA requested that Google provide legal authority for its position regarding DCA's attorney-client privilege[14]—a request Google ignored—and explained that litigation would be costly, premature, and unnecessary because the parties had substantial open issues upon which to meet and confer. Google nonetheless filed its Motion to Compel on June 1, 2015.[15]

Fourth, Google inappropriately and inaccurately groups DCA with the other non-parties to the Underlying Action. Tellingly, Google's Motion to Compel sparsely mentions DCA and where it does, it does so inaccurately in association with the other non-parties—all of whom Google refers to collectively as the "Subpoenaed Parties."[16] Similarly, in the instant motion, Google again improperly groups DCA with all the "Subpoenaed Parties" and alleges that DCA "directly influenced the misconduct by AG Hood that is at the core of the underlying action."[17] But Google points only to constitutionally-protected petitioning activity and the vast majority of the

---

[13] Kay-Oliphant Decl., Exh. 12.

[14] Kay-Oliphant Decl., Exh. 13; *see also* DCA Opposition to Google's Motion to Compel, at 1-2 & n.1.

[15] Kay-Oliphant Decl., Exh. 14. Google asserts that it "expended significant effort meeting and conferring" with DCA, Google's Motion to Transfer, at 5, but the record reflects exactly the opposite. *See* DCA Opposition to Google's Motion to Compel, at 1-2, 5-7.

[16] *See* DCA's Opposition to Google's Motion to Compel, at 6-7 & nn. 18-21.

[17] *See* Google Inc.'s Rule 45(f) Motion to Transfer, at 1, D.I. 9 (June 4, 2015) ("Google's Motion to Transfer").

"evidence" Google references regarding the "Subpoenaed Parties" in no way relates to DCA.[18] Google should not be able to subject DCA to onerous discovery and transfer to a far-away district if it asserts its claims without particularity, without basis, and often in error.

Fifth, and finally, this Court can resolve any disputes regarding the Non-Party Subpoena without difficulty, and it is appropriate for this Court to do so. Google, Attorney General Hood, and the Underlying Action court *all agree* that the Underlying Action pertains to a "legal question," namely "whether the Attorney General can regulate Google's making accessible a specific type of content—content created by third parties that the Attorney General deems objectionable."[19] When facing the possibility of having to produce its own documents, Google stated that the sole issue in the Underlying Action is "*a legal question, squarely answered by the Constitution and the Communications Decency Act*." Google's Memorandum in Support of Protective Order, at 3 (emphasis added). But Google cannot have it both ways.

Here, resolving the limited relevancy disagreements for this legal question will not be difficult, and this Court is well-equipped to do so. DCA's claims of privilege—such as pursuant to its separate and independent attorney-client relationship with Mike Moore and his firm or the unique First Amendment-protected petitioning activities that it undertakes when it researches and publishes reports to educate the public and policymakers—do not overlap with those of either Attorney General Hood or the other non-parties. Just as with the relevancy questions, this Court

---

[18] See, for instance, *id.* at 2-3, where Google asserts without evidence that DCA, again grouped together as one of the "Subpoenaed Parties," "actually drafted" the civil investigative demands that Attorney General Hood issued to Google in October 2014. That is simply false.

[19] *See* Memorandum of Google in Support of Motion for a Protective Order, at 3, *Google Inc. v. Hood*, No. 14-cv-981-HTW-LRA (S.D. Miss.) (June 8, 2015) ("Google's Memorandum in Support of Protective Order"); *see also* Attorney General Jim Hood's Memorandum Brief in Opposition to Plaintiff Google Inc.'s Motion for a Protective Order with Respect to Notices of Rule 30(b)(6) Deposition Notices of Google Inc., at 4, *Google Inc. v. Hood*, 14-cv-981-HTW-LRA (S.D. Miss.) (June 16, 2015) ("'the parties agreed upon the relevant facts and . . . viewed the matter *primarily as a dispute of law*'") (quoting Google's Memorandum in Support of Protective Order, at 6 (quoting Order Denying Motion to Dismiss, at 6, *Google Inc. v. Hood*, 14-cv-981-HTW-LRA (S.D. Miss.) (March 27, 2015))) (emphasis added).

can and should resolve privilege questions without significant impact on any other proceedings. This is particularly true, here, where DCA is a small non-profit institution that focuses its limited resources on publishing to educate the public regarding real threats on the internet. In alignment with its mission, it filed the *Amici* Brief. But DCA did not therefore consent to protracted litigation in Mississippi, and forcing DCA to defend its rights in Mississippi would be onerous and disruptive.

## ARGUMENT

### I.   GOOGLE MUST DEMONSTRATE "EXCEPTIONAL CIRCUMSTANCES" TO OVERCOME NON-PARTY DCA'S SIGNIFICANT INTEREST AGAINST LITIGATING IN A DISTANT DISTRICT.

The Federal Rules of Civil Procedure rarely permit dragging a non-party into a distant forum for a mere discovery dispute. Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that motions to compel are properly filed in "the district where compliance is required . . . ." This is distinct from the "the court where the action is pending." *See* FED. R. CIV. P. 45(a)(2). The rules thus provide that a subpoena issues from the "court where the action is pending" under Federal Rule of Civil Procedure 45(a)(2) and enforcement of the subpoena occurs "in the district where compliance is required" under Federal Rule of Civil Procedure 45(d)(2)(B)(i). Under Federal Rule of Civil Procedure 45(f), a court may transfer a motion compelling discovery to the issuing court if "exceptional circumstances" exist. *See, e.g., CMB Expert, LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840, at *1 (N.D. Tex. May 27, 2014). Although there is little precedent analyzing this relatively new rule, observers note that transfer should occur rarely. *See Woods ex rel. U.S. v. SouthernCare, Inc.*, 303 F.R.D. 405, 409 (N.D. Ala. 2014) (citing, *inter alia*, 9 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 45.50[4] (3d ed. 2014) ("With Rule 45(f) requiring 'exceptional circumstances' for a court-ordered transfer, transfer of a subpoena-related motion is likely to continue to be unusual.").

The party seeking transfer bears the burden to show that there exist "exceptional circumstances" that justify transfer. *See CMB Expert*, 2014 WL 2197840, at *1. Importantly, under Rule 45(f) the paramount concern in considering whether to transfer is avoiding burdens on local non-parties such as DCA. *See id.* (citing FED. R. CIV. P. 45(f), Advisory Comm. Notes, 2013 Amend., Subdivision (f) ("The ***prime concern*** should be ***avoiding burdens on local nonparties*** subject to subpoenas, and it should ***not be assumed*** that the issuing court is in a superior position to resolve subpoena-related motions.") (emphases added)). This is because "[i]t would generally be unfair and unreasonably burdensome to require a third-party (or nonparty) to present its challenge to a subpoena in a remote location where the action is pending." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. 15-mc-00099-SI, 2015 WL 2359568, at *12 (D. Or. May 18, 2015) (denying motion to transfer); *see also Judicial Watch, Inc. v. Valle Del Sol, Inc.*, No. 14-mc-0538-BAH, 2014 WL 4954368, at *4 (D.D.C. Oct. 3, 2014) (noting the "general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes").

Ordinarily, a party can demonstrate "exceptional circumstances" only where a case has matured to a point that a transfer is necessary to "avoid disrupting the issuing court's management of the underlying litigation" or to avoid a multiplicity of results, such as "when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *CMB Expert*, 2014 WL 2197840, at *1 (quoting citing FED. R. CIV. P. 45(f), Advisory Comm. Notes, 2013 Amend., Subdivision (f)). "In evaluating whether 'exceptional circumstances' are present warranting transfer, the Court must . . . consider a number of factors relating to the underlying litigation." *Judicial Watch*, 2014 WL 4954368, at *3 (listing factors such as "complexity, procedural posture, duration of pendency, and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation"). The court must also

"consider whether requiring the local nonparty to litigate subpoena-related motions in the issuing court would present an undue burden or cost." *Id.*

> Most nonparty subpoenas will raise issues that are related to the underlying litigation and that are somewhat likely to require future resolution by the issuing court. If judicial efficiency is the primary concern, transfer would almost ***always*** be appropriate in order to avoid multiple rulings on the same issues. ***The Committee notes, however, do not cite judicial efficiency as a basis for transfer***. ***The rule requires exceptional circumstances***, as demonstrated by disruption of the underlying litigation***; these circumstances do not exist simply because the issuing court is in a better position to decide the motion or because that court may resolve similar issues in the future***.

*Woods ex rel. U.S.*, 303 F.R.D. at 408-09 (emphases added).

Therefore, "the fact that the issuing court undeniably had greater familiarity with the underlying action" does not constitute an exceptional circumstance. *See CMB Expert*, 2014 WL 2197840 at *2; *see also Garden City Employees' Retirement System v. Psychiatric Solutions Inc.*, No. 13-mc-238, 2014 WL 272088, at *3 (E.D. Pa. Jan. 24, 2014) (denying transfer when a non-party was represented by separate counsel than that representing the parties in the dispute and the burden of litigating in a distant district outweighed the benefits of litigating in the issuing court that "undeniably has greater familiarity with the Underlying Action"). That the underlying action court is in a "better" position to decide the motion is not an exceptional circumstance. *See Woods ex rel. U.S.*, 303 F.R.D. at 409; *see also Garden City*, 2014 WL 272088, at *3.

Additionally, if it is unlikely that resolving non-party subpoena disputes will conflict with rulings of the underlying action court, courts will not transfer resolution of disputes regarding non-party subpoenas to the underlying action court. *See Dagett v. Scott, et al.*, CA No. 15-mc-0065-CMA-MJW, 2015 WL 3407314, at *2 (D. Colo. May 26, 2015) (denying transfer even where there was little burden on the non-party, because the rulings by the court in the non-party's district would likely not conflict with the rulings of the court in the underlying action, so there were no exceptional circumstances warranting transfer). Similarly, where the relevancy questions are

straightforward, courts do not transfer. *Cf. Deloitte & Touche LLP v. Federal Housing Finance Agency*, No. 15-mc-568-RMC, 2015 WL 3413540, at *2 (D.D.C. May 28, 2015). Indeed, a rule that a court should transfer a subpoena to the underlying action court where relevancy is at issue would "turn the exception into the rule." *Id.* (noting that transfer is appropriate only where petitioner demonstrated that resolving the dispute will require "delving into substantive issues in the highly complex Underlying Action" and "nuanced legal analysis based on a full understanding of the Underlying Action" rather than a "mere relevancy determination").

Finally, even in instances where a party satisfies its burden to show "exceptional circumstances," "[t]ransfer is appropriate only if such interest ***outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion***." *CMB Expert*, 2014 WL 2197840, at *1 (emphasis added). To be clear, even if the circumstances are exceptional, the rule still requires the enforcing district to dismiss a motion to transfer if the non-party has significant interests in resolving disputes locally. In one pertinent example, *CMB Expert*, the petitioner claimed as "exceptional circumstances" that the underlying action was "fairly complex," that there was a related criminal case ongoing in the issuing district, and that the underlying court was already considering discovery motions submitted by the parties to the underlying action. *Id.* Respondent argued only that as a Dallas-based company, with all its documents in Dallas, it would be a burden to litigate in Illinois. *Id.* The court found that petitioner had failed to demonstrate "exceptional circumstances" and denied transfer. *Id.*, 2014 WL 2197840, at *2. That reasoning applies here.

## II.  GOOGLE FAILS TO PRESENT "EXCEPTIONAL CIRCUMSTANCES" TO OVERCOME DCA'S INTEREST IN LOCAL RESOLUTION OR JUSTIFY IMPOSING UNDUE BURDEN.

Google's Motion to Compel should be heard in Washington, D.C. because DCA, a non-party from which Google seeks discovery, is located and has its principal place of business here. By rule, this district is the proper venue to adjudicate Google's Motion to Compel. And non-party DCA is exactly the type of non-party the rules are designed to protect—DCA has an extreme interest "in obtaining local resolution of the motion." See FED. R. CIV. P. 45(f), Advisory Comm. Notes, 2013 Amendment, Subdivision (f); *see also CMB Expert*, 2014 WL 2197840, at *2 (denying transfer under Rule 45(f) from the Northern District of Texas for a third party headquartered, based, and having responsive documents in Dallas). DCA has no offices in Mississippi and does not conduct business there. DCA's counsel likewise has no offices in Mississippi.

Considering its non-party status, forcing DCA and its counsel to litigate out of their home district to address a motion to compel would be unduly burdensome. *See, e.g., Garden City*, 2014 WL 272088, at *3. DCA is a non-profit entity interested in broad policy questions concerning internet safety. DCA should not be subjected to discovery enforced in every jurisdiction in which it simply submits an *amicus* brief through counsel admitted *pro hac vice* there for the purpose of filing the same.[20] DCA's interests in local resolution are thus strong, and therefore the "*prime*

---

[20] Google states that DCA "already appeared voluntarily in the [Underlying Action] through the same counsel representing them here" and "have involved themselves heavily in Mississippi's affairs for several years now." Google's Motion to Transfer, at 2. This mischaracterizes DCA's business, its activities in Mississippi, and its role in the Underlying Action. It cannot be that simply filing an *amicus* brief opens a party to litigating far from their district. Indeed, courts have held that *amici* should not be subjected to onerous discovery simply because they submit an *amicus* brief in an underlying case. *See, generally*, DCA's Opposition to Google's Motion to Compel, at 10-11 (citation omitted). Such a policy would deter *amici*, which would be against public policy. *Id.* (quoting and citing *N. Carolina Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 51-52 (D.D.C. 2005)). "The mere filing of an amicus brief . . . does not open oneself to broad discovery demands, nor does it make one's bias, if any, relevant to the underlying action. . . . [I]mposing such a burden on amici would undoubtedly discourage entities from making amicus filings at all, so as to avoid subjecting themselves to severe scrutiny and onerous discovery requests. . . ." *N. Carolina Right to Life*, 231 F.R.D. at 51-52.

*concern*" under Rule 45(f) in avoiding burdens on non-parties should control. *See* FED. R. CIV. P. 45(f), Advisory Comm. Notes, 2013 Amend., Subdivision (f) (emphasis added).

In the face of the extreme burden on DCA to litigate in Mississippi and the default rule that this Court should resolve discovery disputes regarding its local non-party, Google fails to satisfy its burden to show that there exist "exceptional circumstances." *See CMB Expert*, 2014 WL 2197840, at *1. Rather, Google relies on rote, normal conditions to attempt to justify transfer and asserts that this is a "model case for Rule 45(f) transfer." Google's Motion to Transfer, at 1. It is far from it.

Google first states that transfer is appropriate because the court in the Underlying Action "issued a preliminary injunction," "identified central issues in the litigation," and "set a short timeline for discovery and for the case." *Id*. This is the same as arguing that "the issuing court is in a better position to decide the motion or because that court may resolve similar issues in the future," *Woods ex rel. U.S.*, 303 F.R.D. at 408-09, and that "the issuing court . . . [has] greater familiarity with the underlying action," *CMB Expert*, 2014 WL 2197840 at *2; *see also Garden City*, 2014 WL 272088, at *3, but under Rule 45 that is *not enough*. Indeed, Google's claim of "exceptional circumstances" is much like the petitioner in *CMB Expert*, in which the court listed similar conditions, recognized that they were normal rather than exceptional, and dismissed the motion to transfer. *See CMB Expert*, 2014 WL 2197840, at *2.

Here, it is highly unlikely that resolving the Non-Party Subpoena will conflict with rulings in the Underlying Action or any other related litigation. *See Dagett*, 2015 WL 3407314, at *2. This is because the relevancy of DCA's documents is not in play in any of those litigations, and the adjudication of DCA's privilege assertions in no way overlap with the privilege assertions of other parties. The unique facts and circumstances related to DCA, such as that it is a small, non-profit,

12

purely Washington, D.C.-based entity that primarily does policy research and publishes reports—all of which Google conveniently ignores for purposes of the instant motion—mean that any ruling by this Court will likely not conflict with the rulings of the Underlying Action court.

Google argues that there are "a number of the same privilege issues presented in Google's Motions to Compel" as in the Underlying Action. *See* Google's Motion to Transfer, at 1; *see also id.*, at 8 (pointing to Attorney General Hood's "assertion of the same privileges that the DC Subpoenaed Parties have claimed to date"). Painting again with too broad a brush, Google similarly asserts that Attorney General Hood asserted privilege objections over materials in the Underlying Action "including documents sent back-and-forth between his office and the DC Subpoenaed Parties." *See id.*, at 3. But that makes no sense. Attorney General Hood could not assert privileges over his communications with DCA. And DCA has a unique attorney-client relationship with Mike Moore and his law firm. Determining the scope of privilege associated with that relationship will have no bearing on any privilege claims of Attorney General Hood or the other non-parties. Similarly, DCA's First Amendment privilege for its constitutionally-protected petitioning activities must relate solely and directly to DCA's actions. Google has failed to explain *how* there could be overlap or contradiction between this Court's narrow rulings regarding the Non-Party Subpoena and the Underlying Action. Google has therefore failed to meet its burden to demonstrate "exceptional circumstances." *See CMB Expert*, 2014 WL 2197840, at *1. Where there are no "exceptional circumstances," this Court is well-equipped to make privilege determinations for a non-party local to this district.

And, again, the relevancy questions presented by the Non-Party Subpoena are straightforward. Google, the Underlying Action court, and Attorney General Hood *all agree* that the only question open in the Underlying Action is a *legal (not a factual)* question. Any discovery

Google seeks must be in some way relevant to whether Attorney General Hood has the authority to pursue his investigation of Google, a question that is "*squarely* answered by the Constitution and the Communications Decency Act." Google's Memorandum in Support of Protective Order, at 3 (emphasis added).[21] DCA's documents are not relevant to that legal question, but in any event this Court is fully capable to resolve any dispute between DCA and Google on the point. All that is needed are "mere relevancy determination[s];" courts do not transfer in such circumstances. *Cf. Deloitte & Touche*, 2015 WL 3413540, at *2. This is because if transfer were appropriate every time there was a relevancy question, as Google seeks to do here, the exception would *swallow the entire rule*, transferring upon common circumstances rather than exceptional ones. *See id.*

Google next argues that it would be problematic for three different district courts to decide Google's multiple motions to compel which could "lead to inconsistent rulings [and] . . . waste judicial resources." Google's Motion to Transfer, at 1. But, as stated, this is not true because DCA's objections and privilege claims are unique to it. For example, Attorney General Hood may have engaged Mike Moore and his firm to assist in pursing the State of Mississippi's investigation of Google, but the nature and extent of DCA's relationship with Mike Moore and his firm turns on completely different questions. Resolution of the nature and extent of DCA's attorney-client relationship with Mike Moore and his firm will not impact any analysis of the same vis-à-vis Attorney General Hood. Most importantly, however, the fact that Google has served similar subpoenas on other non-parties does not argue in favor of there being "exceptional circumstances." Indeed, that is common in litigation, and such a position puts in the hands of the party seeking discovery the unilateral ability to forum shop by manufacturing the circumstances that would be the basis for haling non-parties into court in distant districts. The Federal Rules do not make it so

---

[21] *See also* DCA's Opposition to Google's Motion to Compel, at 13-15 (discussing in detail the limited relevance, if any, that DCA's documents could possibly have in the Underlying Action).

easy to make a non-party litigate a mere discovery dispute in the location of a party's choosing, and rightly so.

Google relies heavily on *Judicial Watch* but that case recognizes the "general interest in protecting local nonparties by requiring local resolution of subpoena-related disputes." 2014 WL 4954368, at *4. It is also easily distinguished. First, in that case, there was minimal burden on the subpoena target because, in relevant part, electronic production of responsive documents was acceptable and the subpoena target already was engaged in litigation "across the country" having "national reach and familiarity with litigation in courts" other than its home district. *See Judicial Watch*, 2014 WL 4954368, at *4. DCA could not be more different. It is not clear, at this premature stage, whether Google will accept only electronic production of responsive documents (if any)— Google's single meet-and-confer did not address such an advanced issue. Regardless, DCA is not engaged in litigation in districts outside of Washington, D.C., nor would it be so engaged in the normal course of its business. It does not have "familiarity with litigation in courts" other than in Washington, D.C., so its strong interest in settling subpoena-related disputes locally is paramount.

Second, the court in *Judicial Watch* considered transfer to an underlying action that had been pending for *four years* and had already involved "innumerable discovery disputes (including several involving clients of Judicial Watch)." *Id.* (citation omitted). Again, the current situation could not be more different. The Underlying Action is nascent and there have been very few discovery disputes or resolutions of the same. And none of those discovery disputes pertain directly to DCA. As such, there is no reason for this Court to defer to the Underlying Action court, as there was in *Judicial Watch*.

Third, and finally, the court in *Judicial Watch* determined that because there were multiple non-parties in multiple districts, it should transfer disputes related to the subpoena to the

underlying action. *Id.*, 2014 WL 4954368, at *5. But this was because all the non-parties "played

a role in the drafting and passage of" the law at issue. *Id.* Here, despite Google's allegations that

group DCA with all the "Subpoenaed Parties," Google has inartfully, inappropriately, and

*incorrectly* argued that DCA had a part in drafting Attorney General Hood's civil investigative

demands. Unlike the respondent in *Judicial Watch*, DCA did not participate in drafting Attorney

General Hood's demands. *Judicial Watch* is therefore inapposite.

Google argues that pursuant to *Fed. Deposit Ins. Co. v. Everest Reinsurance Holdings,*

*Inc.*, 13 Misc. 381 (KPF), 2014 WL 260589 (S.D.N.Y. Jan. 23, 2014), this Court should transfer

for reasons of judicial economy, because this Court is not "in the best position" to resolve

relevancy points, and because there is a motion to compel pending in the Underlying Action. *See*

Google's Motion to Transfer, at 6, 7, 9. But Rule 45(f) and its accompanying Committee notes "do

not cite judicial efficiency as a basis for transfer" and the fact that the "issuing court is in a better

position to decide the motion" does not constitute "exceptional circumstances." *See Woods ex rel.*

*U.S.*, 303 F.R.D. at 408-09. Further, pending discovery motions in the Underlying Action are not

"exceptional" in the least; almost every litigation will have some sort of underlying discovery

dispute—for instance, attorney-client privilege. Google again does not explain how a privilege

determination *as to DCA* could step on the toes of any other court, and the pendency of

"tangentially related motions" before the Underlying Action court does not create exceptional

circumstances sufficient to justify a Rule 45(f) transfer. *See CMB Expert*, 2014 WL 2197840, *2.

Google points to *Agincourt Gaming LLC v. Zynga, Inc.*, No. 14-cv-708-RFB-NJK, 2014

WL 4079555 (D. Nev. Aug. 15, 2014), for the assertion that there is no additional burden in having

the Underlying Action court rather than this Court adjudicate disputes related to the Non-Party

Subpoena. *See* Google's Motion to Transfer, at 12. But this disregards the entirety of the

framework of Rule 45, which is designed to protect non-parties from unnecessary burden and makes the default position the exact opposite. Additionally, as discussed above, Google has demonstrated its desire to litigate at the drop of a hat and will not attempt to resolve differences before running to court; in such a situation, the possible burdens imposed on DCA could be unbounded and unpredictable, much more than the simple resolution of the pending Motion to Compel. It is true that "absent unusual circumstances, the cost of litigation alone does not constitute an unfair burden," *Agincourt Gaming*, 2014 WL 4079555, at *7, but these are unusual circumstances where DCA's counsel is neither licensed in nor regularly practices in Mississippi and Google has demonstrated that it seeks protracted, unnecessary litigation as much and as quickly as possible no matter the cost. Google should come to DCA if it seeks such a posture, not the other way around.

In the end, this case is most like *CMB Expert*. There, as here, the non-party had a strong interest in "obtaining local resolution." *CMB Expert*, 2014 WL 2197840, at *1 (emphasis added). There, the petitioner (like Google) claimed as "exceptional circumstances" that the underlying action was "fairly complex" and that the underlying court was already considering discovery motions submitted by the parties to the underlying action. *Id.* There, as here, the respondent— rather than being a national organization or a party that routinely litigates in districts other than its own—was based and had all of its documents in its district. *Id.* Google may try to make much of the fact that it has served many non-parties in other districts, a point that the parties consented to avoid in *CMB Expert*, but, as discussed above, non-parties in multiple districts are common rather than exceptional and that standard would put too much power in the hands of a petitioner to fabricate the very basis for "exceptional circumstances." This Court, like the court in *CMB Expert*, should find that Google has failed to demonstrate "exceptional circumstances" that in any way

outweigh DCA's considerable interest in having the dispute resolved locally and the undue burden

Google seeks to impose upon DCA by dragging it to Google's preferred venue.

## CONCLUSION

For the foregoing reasons, Google's Motion to Transfer should be denied.


June 22, 2015                                    MASSEY & GAIL LLP


                                        By:  /s/ Eli J. Kay-Oliphant_____

                                            Jonathan S. Massey (D.C. Bar No. 457593)
                                            Eli J. Kay-Oliphant (D.C. Bar No. 503235)
                                            1325 G Street, N.W.
                                            Suite 500
                                            Washington, DC  20005

                                            *Attorneys for Subpoenaed Non-Party*
                                            *Digital Citizens Alliance*