UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GOOGLE INC.<br>   Petitioner,<br><br>v.<br><br>DIGITAL CITIZENS ALLIANCE,<br>MOTION PICTURE ASSOCIATION OF<br>AMERICA, INC., and<br>JENNER & BLOCK LLP<br><br>   Respondents. | CASE NO.: 1:15-mc-00707-JEB-DAR<br><br>CASE IN OTHER COURT:<br>No. 3:14-cv-00981-HTW-LRA (S.D. Miss.) |

**SUPPLEMENTAL DECLARATION OF MICHAEL H. RUBIN
IN SUPPORT OF GOOGLE INC.'S RULE 45 MOTIONS
TO COMPEL COMPLIANCE WITH SUBPOENA**

I, MICHAEL H. RUBIN, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am a partner with the law firm Wilson Sonsini Goodrich & Rosati, attorneys for Petitioner Google Inc. ("Google"). I submit this affidavit to supplement the affidavit I submitted on June 1, 2015, in further support of Google's Federal Rule of Civil Procedure 45 Motions to Compel Compliance with Subpoena (the "Motions") against the law firm of Jenner & Block ("Jenner"), the Motion Picture Association of America, Inc. ("MPAA"), and the Digital Citizens' Alliance ("DCA") (collectively, the "Subpoenaed Parties"). The following facts are true of my personal knowledge and if called and sworn as a witness I could competently testify to them.

2.  Along with others at my firm, I have been involved with Google's efforts to obtain discovery from third parties to support its claims against Mississippi Attorney General Jim Hood ("AG Hood") in *Google Inc. v. Hood* (3:14-cv-00981-HTW-LRA, S.D. Miss.) ("*Google Inc. v. Hood*").

**Meet-and-Confer Discussions and the Subpoenaed Parties' Document Productions**

3. Throughout my meet-and-confer efforts with respective counsel for the Subpoenaed Parties, my colleagues and I repeatedly asked that they promptly produce the documents they had agreed to produce in response to Google's subpoena. (Dkt. No. 6-14, Exh. 15 at 1; Dkt. No. 6-15, Exh. 16 at 1; Dkt. No. 6-17, Exh. 18 at 1; Dkt. No. 7-1, Exh. 22 at 1; Dkt. No. 7-3, Exh. 24 at 1; Dkt. No. 7-5, Exh. 26 at 1; Dkt. No. 7-12, Exh. 33 at 2; Dkt. No. 7-14, Exh. 35 at 2-3; Dkt. No. 7-20, Exh. 41 at 3; Dkt. No. 7-21, Exh. 42 at 2.) Counsel for both Jenner and the MPAA maintained, in highly similar correspondence to me, that they would not produce documents without a protective order in place. (Jenner: Dkt. No. 7-6, Exh. 27, Tompkins cover letter at 1, Amended Responses & Objections at 6; Dkt. No. 7-17, Exh. 38 at 2; Dkt. No. 7-30, Exh. 51, at 1; MPAA: Dkt. No. 7-7, Exh. 28, Creelan cover letter at 2; Dkt. No. 7-16, Exh. 37 at 2; Dkt. No. 7-24, Exh. 45 at 1.) Counsel for the DCA would not commit to a production date, stating only that he expected to begin "rolling" productions shortly after a May 19 meet-and-confer call.

4. Despite my repeated requests, it was not until after I notified their counsel on May 27 that Google planned to move to compel that any of the Subpoenaed Parties committed to producing documents. On May 28, MPAA counsel Jeremy Creelan notified me by letter that the MPAA would produce responsive documents by June 3, 2015. (Dkt. No. 7-24, Exh. 45 at 1.)

5. Despite committing to produce documents by June 3, the MPAA did not produce any documents until June 22, 2015, the same day as the deadline for Google's reply to the MPAA's opposition brief.

6. As of this date, the DCA has not produced any documents to Google, despite DCA counsel Eli Kay-Oliphant's May 19 statement that he expected to begin producing documents soon.

7. On June 12, 2015, 11 days after Google filed the instant Motion, Jenner produced 295 documents to Google in response to Google's subpoena.

8. When Jenner stated during the meet and confer process that it would not produce documents without a protective order being in place, Google was clear that it would not agree to one absent a showing that one was called for. Jenner never explained the factual reasons why a protective order was needed and no protective order issued. Jenner nevertheless made a small production. In connection with its production, Jenner purported to impose conditions on the use of the documents, including by labeling them "confidential." I advised Jenner that because Google had not agreed to be bound by those conditions it would not abide by them. I received no response to that message.

9. Jenner's June 12 production is Bates Numbered JB_00000001 through JB_00000629. These documents consist of email communications that included AG Hood or his staff and a Jenner custodian, as well as documents attached to those emails (some of which Jenner says it withheld at the request of AG Hood).

    a. Attached hereto as Exhibit 1 is a true and correct copy of an October 28, 2014 email exchange between Tom Perrelli, Vans Stevenson, and AG Hood that was produced by Jenner and Bates Numbered JB_00000473.

    b. Attached hereto as Exhibit 2 is a true and correct copy of a February 21, 2014 email exchange between Mary Jo Woods in AG Hood's office, Mike Moore,

      Rob McKenna, Brian Moran, Tom Perrelli, and others that was produced by Jenner and Bates Numbered JB_00000333-34.

c.     Attached hereto as Exhibit 3 is a true and correct copy of an October 17, 2013 email exchange between Tom Perrelli and AG Hood that was produced by Jenner and Bates Numbered JB_00000082-84.

d.     Attached hereto as Exhibit 4 is a true and correct copy of a February 22, 2014 email exchange between Mary Jo Woods, Blake Bee, and Tom Perrelli that was produced by Jenner and Bates Numbered JB_00000364.

e.     Attached hereto as Exhibit 5 is a true and correct copy of a February 18-19, 2014 email exchange between Mary Jo Woods and Tom Perrelli that was produced by Jenner and Bates Numbered JB_00000277-280.

f.     Attached hereto as Exhibit 6 is a true and correct copy of a January 9, 2014 email exchange between Rob McKenna, Mike Moore, Mary Jo Woods, Tom Perrelli, and others that was produced by Jenner and Bates Numbered JB_00000134-35.

g.     Attached hereto as Exhibit 7 is a true and correct copy of an October 3, 2014 email exchange between Mike Moore, Vans Stevenson, Tom Perrelli, AG Hood, and others that was produced by Jenner and Bates Numbered JB_00000462-63.

h.     Attached hereto as Exhibit 8 is a true and correct copy of a March 10, 2014 email exchange between Mary Jo Woods and Mike Moore that was produced by Jenner and Bates Numbered JB_00000390-91.

   i.  Attached hereto as Exhibit 9 is a true and correct copy of a January 15, 2014 email exchange between Tom Perrelli, Rob McKenna, Mike Moore, Mary Jo Woods and others that was produced by Jenner and Bates Numbered JB_00000007-09.

   j.  Attached hereto as Exhibit 10 is a true and correct copy of a June 4, 2014 email exchange between Rob McKenna, AG Hood, Brian Moran and Tom Perrelli that was produced by Jenner and Bates Numbered JB_00000400-01.

 10. Jenner's June 12 document production also included a document titled "Jenner & Block LLP Withheld Document Log," a true and correct copy of which is attached hereto as Exhibit 11. That log does not contain documents being withheld based on a privilege being asserted by Jenner, but rather lists documents being withheld at the request of AG Hood.

### Meet-and-Confer Discussions with the DCA about Mike Moore

 11. During a May 19, 2015 meet-and-confer call, DCA counsel Mr. Kay-Oliphant refused to consider Mike Moore as part of AG Hood's office, claiming that the DCA's communications with Mike Moore are covered by the attorney-client privilege. I explained that per a June 29, 2012 agreement, Mr. Moore had been deputized to function as an agent of Hood's office as part of the "investigation" of Google in mid-2012, which was before the DCA had even been founded. Because of that, for at least the specific set of documents sought by the subpoena Mr. Moore, was acting as a member of AG Hood's office and DCA's communications with him needed to be produced. Mr. Kay-Oliphant claimed that he needed time to evaluate the impact of Mr. Moore's role in AG Hood's office on the DCA's willingness to produce the requested documents.

**Meet-and-Confer Discussions about Burden**

12.     The MPAA's counsel, Messrs. Creelan and Micah Cogen of Jenner, stated during a May 13, 2015 meet-and-confer call that the MPAA was willing to produce approximately 1,300 responsive communications with AG Hood on the condition that Google enter into a protective order. The MPAA did not, however, ever provide the total size of its document review population, nor did it ever disclose the search terms it used to arrive at that set of documents.

13.     The DCA's counsel, Mr. Kay-Oliphant, stated during a May 19, 2015 meet-and-confer call that Google's subpoena would require review of roughly 120,000 documents. He also stated that his office had already completed a preliminary document review at that time.

*****

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. Executed on June 22, 2015 in San Francisco, California

Michael H. Rubin