**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| GOOGLE INC. | ) | |
| Petitioner, | ) | |
| | ) | **CASE NO.:** 1:15-mc-00707-JEB-DAR |
| v. | ) | |
| | ) | **CASE IN OTHER COURT:** |
| | ) | No. 3:14-cv-00981-HTW-LRA (S.D. Miss.) |
| DIGITAL CITIZENS ALLIANCE, | ) | |
| MOTION PICTURE ASSOCIATION OF | ) | |
| AMERICA, INC., and | ) | |
| JENNER & BLOCK LLP | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**GOOGLE INC.'S REPLY IN SUPPORT OF RULE 45(f) MOTION TO TRANSFER**

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Veronica S. Ascarrunz (D.C. Bar No. 494474)
1700 K Street, NW
Fifth Floor
Washington, DC 20006
Email: vascarrunz@wsgr.com
Phone: (202) 973-8800
Fax: (202) 973-8899

David H. Kramer (admitted *pro hac vice*)
Michael H. Rubin (admitted *pro hac vice*)
650 Page Mill Road
Palo Alto, CA 94304
Email: dkramer@wsgr.com
Email: mrubin@wsgr.com
Phone: (650) 496-9300
Fax: (650) 493-6811

*Attorneys for Plaintiff*
GOOGLE INC.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

RESPONSIVE BACKGROUND ..........................................................................................2

ARGUMENT .........................................................................................................................5

**I.**  Google Has Shown that Exceptional Circumstances Exist to Support Transfer .................5

    **A.**  The Mississippi Court Has Already Made Relevance Determinations Bearing on Google's Motions to Compel ...............................................................5

    **B.**  The Mississippi Court Has a Pending Motion to Compel Before it Raising Privilege Issues that Bear on the Motions to Compel. ...........................................9

    **C.**  Resolving Multiple Subpoenas in Different Jurisdictions Risks Inconsistent Rulings and Warrants Transfer. .......................................................11

**II.**  Transfer Would Not Unduly Burden the Subpoenaed Parties ...........................................13

CONCLUSION .....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Agincourt Gaming, LLC v. Zynga, Inc.*,
    2014 U.S. Dist. LEXIS 114348 (D. Nev. Aug. 15, 2014) ......................................7, 11, 15

*CMB Expert, LLC v. Atteberry*,
    2014 U.S. Dist. LEXIS 72029 (N.D. Tex. May 27, 2014) ................................................8

*Judicial Watch, Inc., v. Valle Del Sol, Inc.*,
    2014 U.S. Dist. LEXIS 140784 (D.D.C. Oct. 3, 2014)................................................7, 14

*Woods ex rel. United States v. SouthernCare, Inc.*,
    303 F.R.D. 405 (N.D. Ala. 2013)...................................................................................7, 8

*Wultz v. Bank of China, Ltd.*,
    304 F.R.D. 38 (D.D.C. 2014)...........................................................................................12

*XY, LLC v. Trans Ova Genetics, L.C.*,
    No. 1:14-mc-00778 (CRC), 2014 U.S. Dist. LEXIS 126258
    (D.D.C. Sept. 10, 2014) .....................................................................................................7

**RULES**

Rule 45 ...................................................................................................................................2, 14

**MISCELLANEOUS**

Press Release, Mississippi Attorney General, Attorney General Hood Asking
    Google to Address Alleged Violations of Intellectual Property Rights
    (June 6, 2013) ("Press Release, June 6, 2013), *available at*
    <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-
    6_AGAsking-Google-to-Address-Alleged-Violations-of-Intellectual-
    PropertyRights.pdf> ......................................................................................................8, 9

Press Release, Mississippi Attorney General, Attorney General Hood Asks
    Colleagues to Issue Subpoenas in Google Investigations (June 18, 2013)
    ("Press Release, June 18, 2013), *available at*
    <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-18_AG-
    Asks-Colleagues-to-Issue-Subpoenas-in-Google-Investigations.pdf>..........................8, 9

"Exchanges Between Current and Former Mississippi Attorneys General," The
    New York Times (Dec. 17, 2014) ("Moore Article"), *available at*
    <http://www.nytimes.com/interactive/2014/12/17/technology/documentex
    changes-between-current-and-former-missippippi-attorneysgeneral.html>..................4, 13

**INTRODUCTION**

In opposing Google Inc. ("Google")'s motion to transfer, the Motion Picture Association

of America, Inc. ("MPAA"), Jenner & Block LLP ("Jenner"), and the Digital Citizens Alliance

("DCA") (collectively the "Subpoenaed Parties") cast themselves as bystanders to the underlying

litigation and the events leading to it.  The MPAA and Jenner claim that Google somehow

"dragged [them] into its dispute with [the] Attorney General."  MPAA/Jenner Opp. to Mot. to

Transfer ("MPAA/Jenner Opp."), Dkt. No. 22, at 1.  The DCA portrays itself as a mere *amicus*

of the Mississippi court, and reassures this Court that it "does not do business in Mississippi."

DCA Opp. to Mot. to Transfer ("DCA Opp."), Dkt. No. 23, at 1.  Their rhetoric does not match

reality.

The Subpoenaed Parties sought out Mississippi when they co-opted the state's Attorney

General for their anti-Google campaign.  Documents withheld by the MPAA until last week

reveal a stunning level of involvement in Mississippi's affairs.  The MPAA and Jenner

repeatedly travelled to the state to meet with the attorney general; they hosted campaign

fundraisers and made contributions for Attorney General Hood ("AG Hood"); and they

controlled the pen used to draft AG Hood's illicit demands and threats to Google.  The DCA

(funded by the MPAA) likewise visited with AG Hood in Mississippi, established a presence on

the ground, and regularly communicated with him — retaining Mississippi's former attorney-

general, Mike Moore, to lobby AG Hood as part of "Project Goliath."  It was Google that was

"dragged" into this dispute by the Subpoenaed Parties, and not the other way around.

But it is not merely the Subpoenaed Parties' starring role in the underlying events that

warrants transfer of Google's Motions to Compel to Judge Wingate in Mississippi; all of the

Rule 45 factors support it as well.  Judge Wingate has already issued rulings that bear on the

pending motions, rulings the Subpoenaed Parties mischaracterize or ignore.  He also has a

motion under submission that will resolve the propriety of the Subpoenaed Parties' withholding

of materials that they fed to AG Hood, and potentially their withholding of internal drafts and

discussions of those materials.  Consistent with Rule 45(f), it makes sense to litigate the meaning

of Judge Wingate's decisions and the discoverability of the requested documents in his court,

rather than in multiple courts, given the risk of inconsistent determinations and possible conflict

with the underlying litigation's tight discovery schedule.

The Subpoenaed Parties have made clear that they have no problem acting in Mississippi

when it suits their ends.  After their years of direct involvement there, litigating objections to a

single subpoena in the state could not be an undue burden.  Because Google's Motions to

Compel present the exceptional circumstances that Rule 45 envisions, Google requests that they

be transferred to Judge Wingate for further proceedings.

## RESPONSIVE BACKGROUND

According to the Subpoenaed Parties, they are strangers to Mississippi.  But documents

produced last week by the MPAA (just as briefing was closing on the motion to compel) tell a

very different story.[1]

---

[1] As a condition of producing documents constituting communications with AG Hood, the MPAA insisted that the documents be kept confidential. Though Google disagrees that there is any basis for confidential treatment here (especially in documents voluntarily exchanged with a public official), it agreed to the MPAA's condition in order to at least start the flow of information. The MPAA produced roughly 1300 documents all labeled "Confidential," though a review has confirmed that they are nothing of the sort. To date, the DCA has still produced no documents.  The MPAA has agreed to withdraw the "Confidential" designation for all documents cited herein. Second Supplemental Declaration of Michael H. Rubin ISO Google's Mot. to Transfer ("Second Supp. Rubin Decl.") ¶ 13.  This motion cites to three different declarations submitted in support of Google's Motion to Compel and Motion to Transfer: Declaration of Michael H. Rubin ISO Google's Motion to Compel, Dkt. No. 1-2, 4-2, 5-2,

The Subpoenaed Parties and their representatives made repeated visits to AG Hood's

office in Mississippi to guide his anti-Google work.[2]   Even when they weren't physically at AG

Hood's office, they may as well have been, getting together with him in Denver and Santa

Monica[3] and holding a fundraising dinner for him in New Orleans.  *See, e.g.*, Second Supp.

Rubin Decl., Exh. 17, MPAA00001576-77 (invitation to fundraising dinner for AG Hood hosted

by *inter alia* the MPAA, Rick Smotkin (NBC) and Orrick Herrington (Microsoft)).  But those

interactions only scratch the surface, as the documents reveal remarkably cozy and constant

communications between the Subpoenaed Parties and AG Hood.  Second Supp. Rubin Decl.

Exhs. 18 & 5, MPAA00001680-84 & MPAA00001536-38 (MPAA's Brian Cohen greeting one

of AG Hood's staffers with "Hello my favorite" and offering to send her pictures of his vacation

in New Zealand); *see also id.*, Exh. 6, MPAA00000520-21 (discussing a meeting with AG

Hood's staff the MPAA's Cohen gushed "OMG we spent 3 hours.").[4]   This pattern of sustained,

---

6, and 7 ("Opening Rubin Decl."); Supplemental Declaration of Michael H. Rubin ISO Google's Mot. to Compel, Dkt. No. 24-1 ("Supp. Rubin Decl."); and the "Second Supp. Rubin Decl."

[2] Second Supp. Rubin Decl. Exh. 13, MPAA00000075 (Brian Cohen of the MPAA discussing his first trip to Mississippi to meet AG Hood in April 2012); *id.*, Exh. 8, MPAA00000509-16 (indicating that Vans Stevenson (MPAA), Brian Cohen (MPAA), David Green (NBC), Tom Galvin (DCA) and others would be attending a meeting in Jackson MS, with AG Hood's office); *id.*, Exh. 1, JB_00000330 (Email from Brian Cohen (MPAA) mentioning how nice it was to visit Jackson, MS); *id.*, Exh. 16, MPAA 00000481-87 (Brian Cohen sets up a meeting in Mississippi with AG Hood and his staffers that includes Vans Stevenson and "the guy from the Digital Citizens Alliance.").  Representatives of the NY Parties also made the trip down to see AG Hood. *Id.*, Exh. 14, MPAA00002409 (referencing visit by Scott Martin of Paramount Pictures (Viacom) to meet AG Hood in Jackson, MS).

[3] Second Supp. Rubin Decl. Exh. 2, JB_00000198-99 (Tom Perrelli (Jenner) travels to Denver for NAAG meeting and meets with AG Hood in person); *id.*, Exh. 15, MPAA00000339-342 (Vans Stevenson (MPAA) says he looks forward to seeing one of AG Hood's staffers at a DAGA meeting in Santa Monica).

[4] While the Google investigation was ongoing, a member of AG Hood's staff, who played an integral role in the investigation, sent his resume to the MPAA's Brian Cohen asking for help in finding a job.  Cohen offered to help "think of best way to try to navigate," while simultaneously promising new anti-Google materials for the investigation that the staffer was handling. Second Supp. Rubin Decl. Exh. 12, MPAA00001606.

intimate contact is hardly the mark of a party that merely "communicated with Attorney General

Hood" "previously" as the MPAA characterizes itself.  *See* MPAA/Jenner Opp. at 13-14.

Despite protesting that Google has "inappropriately grouped" it with the MPAA and

Jenner (DCA Opp. at 2), the DCA is no different.  It retained Mike Moore, Mississippi's former

attorney general, as a lobbyist to influence AG Hood regarding his Google investigation, even

while Moore was serving as a deputized agent of AG Hood in connection with that same

investigation.[5]  Alongside the MPAA lobbyists, Moore too was in constant contact with AG

Hood regarding Google.  And he co-hosted the campaign dinner for him that the MPAA put on.

Second Supp. Rubin Decl. Exh. 7, MPAA00002371-73.  Similarly, the DCA's Executive

Director, Tom Galvin, was personally involved in discussions with AG Hood, also traveling to

Mississippi to meet with him. Google's Reply ISO Mot. to Compel, Dkt. No. 24, at 7; Second

Supp. Rubin Decl. Exh. 8, MPAA00000509-16.  Although the DCA claims it "does not do

business in Mississippi" (DCA Opp. at 1, 11), its "business" is lobbying and manufacturing press

at the behest of the MPAA which heavily funds it.  It was extremely active in that regard in

Mississippi.

The Subpoenaed Parties did not act alone in animating AG Hood with respect to Google,

they coordinated their efforts with the major Hollywood studios who make up the MPAA,

including Fox, NBCU and Viacom (collectively the "NY Parties").  That coordination continues

to this day — the NY Parties are using the same law firm, Jenner, to resist subpoenas from

Google, and in the Southern District of New York, they have made relevance, burden and

---

[5] Opening Rubin Decl. Exh. 36 (attaching June 29, 2012 engagement letter between Moore and AG Hood); Moore Article ("Mr. Moore has also been hired by a group called Digital Citizens Alliance — funded in part by the movie industry — to try to push Mr. Hood to investigate Google").

privilege arguments that are virtually identical to those that the Subpoenaed Parties have

advanced here.  *See* NY Parties' Opp. to Mot. to Compel, 1:15-mc-00150-P1 (S.D.N.Y.), Dkt.

No. 16, at 16, 18, 19; MPAA/Jenner Opp. to Mot. to Compel, Dkt. No 17, at 13, 15, 16; Opening

Rubin Declaration ¶¶ 11, 14-19 and accompanying exhibits.

## ARGUMENT

I.   **Google Has Shown that Exceptional Circumstances Exist to Support Transfer**

A.   **The Mississippi Court Has Already Made Relevance Determinations Bearing on Google's Motions to Compel**

The Subpoenaed Parties' principal argument against the transfer to Mississippi of

Google's motions to compel is that nothing that Judge Wingate has said or will say in the

underlying proceeding bears on the issues that these motions to compel present.  But they refute

their own argument when they invoke Judge Wingate twice in the introduction to the brief

opposing the motion to compel, claiming that he deemed the discovery Google seeks irrelevant.

That is false, and also beside the point.  The Subpoenaed Parties plainly recognize that Judge

Wingate's views on the issue of relevance matter and are working hard to spin them before this

Court.  Judge Wingate himself, however, is in a far better position than the Subpoenaed Parties

or anyone else to address that issue.

The Subpoenaed Parties claim that "Google, the Underlying Action court, and Attorney

General Hood *all* agree that the only question open in the Underlying Action is *legal (not a*

*factual)* question." DCA Opp. at 13 (emphasis in original); *see also* MPAA/Jenner Opp. at 10-

11. That too is false. It badly twists a statement Google made in objecting to AG Hood's demand

in Mississippi *for documents regarding Google's behavior*. MS Dkt. 129 at 3, 6, 13.[6]  Those

documents are, in fact, irrelevant to the underlying case which challenges *AG's Hood's* conduct.

And as Judge Wingate already made clear in his Order enjoining AG Hood, *the question of AG*

*Hood's motivation remains of critical relevance*. Rubin Decl. Exh. 53 at 19 (PI Order) ("[I]t is

well-settled that the Attorney General may not retaliate against Google for exercising its right to

freedom of speech by prosecuting, threatening prosecution, and conducting bad-faith

investigations against Google. … Google has submitted competent evidence showing that the

Attorney General issued the subpoena in retaliation for Google's likely protected speech, namely

its publication of content created by third-parties.").  It is on that quintessential fact question that

the Subpoenaed Parties' documents directly bear.  Judge Wingate reinforced that point when he

ordered AG Hood to produce a variety of documents that the Subpoenaed Parties exchanged with

AG Hood.  Rubin Decl. Exh. 14 (Order on *Ore Tenus* Discovery) (ordering AG Hood to produce

various communications with Subpoenaed Parties, as well as drafts of the CID and position

papers that the Subpoenaed Parties provided to AG Hood).

However one interprets Judge Wingate's prior rulings, Google and the Subpoenaed

Parties agree that those rulings bear on Google's motion to compel.  Judge Wingate is best

situated to explain and apply those rulings.[7]  That, in and of itself, warrants transfer of the

---

[6] All citations herein to "MS Dkt." refer to the docket in this Mississippi action.
[7] The same is true with respect to the out-of-context statement that the Subpoenaed Parties pull from the hearing transcript on the preliminary injunction motion before Judge Wingate. *See* MPAA/Jenner Opp. at 3.  They claim Judge Wingate did not see the relevance of the Subpoenaed Parties' involvement in AG Hood's investigation. But the offhand comment they cite came during Judge Wingate's questioning of AG Hood about the Subpoenaed Parties' involvement. MS Dkt. 83 at 73.  The comment also came in the preliminary injunction context where Google had already offered unrebutted evidence of AG Hood's bad faith, making additional evidence of AG Hood's illicit motivation unnecessary for resolving the motion before him.  In any event, Judge Wingate's views again are best addressed by Judge Wingate and not by the Subpoenaed Parties.

motions to Mississippi.  *See Judicial Watch, Inc. v. Valle Del Sol, Inc.*, 2014 U.S. Dist. LEXIS

140784, at \*12 (D.D.C. Oct. 3, 2014) (Where it has previously ruled on similar issues, "[t]he

issuing court is … in a far better position than [the compliance court] to evaluate the relevance

of, and necessity for, the documents demanded."); *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014

U.S. Dist. LEXIS 114348, at \*18 (D. Nev. Aug. 15, 2014) (issuing court's views on relevance

weigh especially in favor of transfer where it has already rendered decisions on the merits of the

case that bear on relevance assessment ); *XY, LLC v. Trans Ova Genetics, L.C.*, 2014 U.S. Dist.

LEXIS 126258, at \*5-6 (D.D.C. Sept. 10, 2014) ("[T]he relevance argument advanced [by the

non-party] emphasizes the need for the court where the underlying matter lies to decide the

matter." (internal quotation marks and citations omitted).[8]

The Subpoenaed Parties contend that the overlap in their relevance position with issues

already addressed in Mississippi does not justify transfer.  But their authority is readily

distinguished.  One court denied transfer of a motion where "some of the issues that will arise in

resolving the motions to quash will also arise in the underlying litigation."  MPAA/Jenner Opp.

at 8 (quoting *Woods ex rel. United States v. SouthernCare, Inc.*, 303 F.R.D. 405, 408 (N.D. Ala.

---

[8] The MPAA and Jenner half-heartedly attempt to distinguish Google's cases. MPAA/Jenner Opp. at 9-10. They claim the action has not been pending in Mississippi long enough for Judge Wingate to have superior familiarity with the facts.  But the Mississippi Court has been extremely active since the case was filed eight months ago, having already conducted five hearings, and issuing five substantive orders, including a detailed opinion on Google's motion for preliminary injunction and AG Hood's motion to dismiss, and three discovery rulings.  *Cf. Judicial Watch*, 2014 U.S. Dist. LEXIS 140784, at \*12 (relying on the court's familiarity with the issues when transferring and highlighting that a similar privilege objection had already been ruled on in the issuing court).  The Subpoenaed Parties argue that *XY, LLC* is inapplicable because the third parties there had a "close connection" to a party in the underlying action. MPAA/Jenner Opp. at 9-10 (discussing *XY, LLC*, 2014 U.S. Dist. LEXIS 126258). But they are even closer to a party in the underlying action here, having directly participated in AG Hood's unlawful conduct.  Finally, the Subpoenaed Parties try to distinguish *Agincourt* on the grounds that the issuing court there had multiple actions involving similar issues.  MPAA/Jenner Opp. at 10 (discussing *Agincourt*, 2014 U.S. Dist. LEXIS 114348).  But the number of actions served only to show the complexity of the underlying case, and this case is no less complex due to the tangled and multi-jurisdictional web of lobbyists who fed AG Hood's anti-Google campaign.

2013)); DCA Opp. at 12.  But the *Woods* case dealt with a situation where the overlapping

relevance question had not yet come up in the underlying case, and merely could in the future —

in fact, the court explicitly distinguished cases where "the issuing court has **already** ruled on the

issues." *Woods.* 303 F.R.D. 405 at 408 (emphasis in original).  That is the case here.  In *CMB*

*Expert, LLC v. Atteberry*, the issuing court had been presented with a motion to stay the case and

as a result, it was not clear that it possessed significantly greater knowledge of the facts. 2014

U.S. Dist. LEXIS 72029, at *3-4 (N.D. Tex. May 27, 2014).  Although the court ultimately

denied transfer, it provided little support for its analysis. And most importantly, a driving factor

in the court's decision appears to have been that only one other subpoena was subject to motion

practice, and the parties had agreed to consolidate that motion before the same court. *Id.* at *4.

Thus, unlike here, there was no potential for inconsistent rulings by different courts.

The Subpoenaed Parties also contend that ordering transfer so that the Mississippi court

can rule on their relevance objections would "open the door to … harassment of non-parties.

MPAA/Jenner Opp. at 8; DCA Opp. at 14 (transfer here "would *swallow the entire rule*"

(emphasis in original)).  But they predicate that argument on the fiction that they have "only a

tangential relationship to the litigation." MPAA/Jenner Opp. at 8.  In reality, the Subpoenaed

Parties were the architects of AG Hood's investigation into Google and worked hand-in-glove

with AG Hood in Mississippi, right up until he "slapped" Google with a CID (that the

Subpoenaed Parties drafted), in retaliation for Google's refusal to censor protected speech. *See*

Press Release, June 6, 2013 (AG Hood announcing: "Google is being asked to adequately

address the attorneys general concerns or prepare to be slapped with subpoena's [sic] forcing the

company to produce documents and answer questions."); Press Release June 18, 2013 ("Due to

Google's refusal to … work with attorneys general, [AG Hood said] he would subpoena

Google's records and emails … ").[9]  *See also* Google's Reply ISO Mot. to Compel, Dkt. No. 24,

at 6-8.  This litigation derives directly from the unlawful investigation that the Subpoenaed

Parties worked so hard to manufacture.  And these motions are precisely the type for which

transfer is warranted.[10]

> **B.      The Mississippi Court Has a Pending Motion to Compel Before it Raising
> Privilege Issues that Bear on the Motions to Compel Here.**

Google has a motion to compel against AG Hood under submission before Judge

Wingate.  In that motion, Google seeks production of lobbying documents over which AG Hood

has asserted some sort of privilege.  In Mississippi and here, Google argues that AG Hood has

"no valid basis to assert privilege" over those documents since "[m]ost of the documents in

question were prepared by third parties lobbying the Attorney General to take action against

Google." *Compare* MS Dkt. 100 at 1 (Google's Motion to Compel against AG Hood) *with*

Google's Mem. ISO Mot. to Compel, Dkt. No. 4-1 at 16-18.[11]  The Subpoenaed Parties were the

---

[9] These press releases are available at <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-6_AGAsking-Google-to-Address-Alleged-Violations-of-Intellectual-PropertyRights.pdf> and <http://www.ago.state.ms.us/wp-content/uploads/2013/08/June-18_AG-Asks-Colleagues-to-Issue-Subpoenas-in-Google-Investigations.pdf>  The MPAA plainly drafted at least the latter release in which AG Hood's retaliatory intent is revealed. *See* Second Supp. Rubin Decl. Exh. 10, MPAA00001115 (where a Hood staffer responds to the of a draft press release from Brian Cohen (MPAA) on June 18, 2013 saying:  "Looks great! I made some minor changes in order to follow our usual formatting style.").

[10] Judge Wingate's order regarding the commencement of discovery is an additional contested issue of potential consequence.  The Subpoenaed Parties argue that Google's March 12 subpoenas were served "before discovery began."  Google has always maintained that discovery opened on March 2, as confirmed in Judge Wingate's April 10 Order. Opening Rubin Decl. ¶ 5, Exh. 14 ("Discovery commenced for the parties and third parties on March 2, 2015."). Given that, Google's subpoenas were proper and the Subpoenaed Parties' "supplemental objections" on April 24 were untimely and waived.  *See* Opening Rubin Decl. Exhs. 1, 2, 6, 15, 16, 18 (subpoenas and letters giving extension to April 17).  To the extent there is disagreement on that point, Judge Wingate, again, is in the best position to resolve it.

[11] The documents at issue include lobbying materials such as draft legal memoranda, draft letters that were to be sent to Google, and draft subpoenas. *See, e.g.*, First Hood Privilege Log, Second Supp. Rubin Decl. Exh. 19, Document PL000223-245 and PL000177-201 (withholding as "work product" a document described as "Email with Legal Memoranda" that was authored by someone at Jenner); Second Hood Privilege Log, Second Supp. Rubin

ones lobbying AG Hood, and they are withholding many of the same documents and perhaps

countless more on the basis of a supposed privilege.

A ruling by the Mississippi Court on Google's pending motion will bear directly on

issues joined in Google's motions here, as the Subpoenas Parties have already conceded.  The

MPAA and Jenner have repeatedly said that they believe the Mississippi Court's ruling will

clarify the scope of privileges in the case and directly bear on their own assertions of privilege.[12]

Indeed, they proposed waiting until Judge Wingate ruled in order to decide whether to produce

documents.  Second Supp. Rubin Decl. ¶¶ 3, 4.  Judge Wingate could conclude, for example, that

the materials AG Hood is withholding are not his work product, but rather materials Jenner sent

on the MPAA's behalf as part of a lobbying campaign.  That, in turn, would cast severe doubt on

the Subpoenaed Parties' attempt to cloak their internal documents in the attorney client privilege

because the lawyers they hired were clearly acting as lobbyists rather than providing legal

advice. Google Mem. ISO Mot. to Compel, Dkt. No. 4-1, at 16-18.  In any event, given the

position they themselves took about waiting for Judge Wingate to rule, their argument now that

"[t]here is no evidentiary or analytical overlap" between these motions and the one pending in

Mississippi is simply not credible.

---

Decl. Exh. 20 (withholding as work product a memorandum written by Tom Perelli at Jenner and a draft letter
drafted by Brian Cohen at the MPAA).  For the first time in their opposition here, the DC Subpoenaed Parties have
agreed to be bound by the Mississippi Court's ruling and produce these documents if the court rules against AG
Hood.

[12] *See, e.g.*, Opening Rubin Decl. ¶¶ 10, 12-16, Exh. 33, 35, 37-38, 41-42.

**C.      Resolving Multiple Subpoenas in Different Jurisdictions Risks Inconsistent Rulings and Warrants Transfer.**

Google's subpoenas here, in New York, and elsewhere all seek similar information related to AG Hood's investigation of Google.  To date, Google has filed Motions to Compel in this Court and the Southern District of New York.  The arguments that the Subpoenaed Parties and the NY Parties advance in opposition to those motions — and in the meet and confer process leading up to them — are virtually identical.  They each assert similar relevance, burden, and privilege objections, often using the same exact words.  They mischaracterize Judge Wingate's prior Orders in the same way, and they stake out the same dubious positions including, for example, the notion that their internal communications about meetings with AG Hood are categorically irrelevant to AG Hood's state of mind.  MPAA/Jenner Opp. to Mot. to Compel, Dkt. 17, at 13; DCA Opp. to Mot. to Compel, Dkt. No. 13, at 13; NY Parties Opp. to Mot. to Compel, 1:15-mc-00150-P1 (S.D.N.Y.), Dkt. No. 16 at 18.[13]  Asking multiple courts to address these issues risks inconsistent outcomes on matters central to the case, a possibility meriting transfer of the motions to a single court.  Google's Mem. ISO Mot. to Transfer, Dkt. No. 9, at 10-11; *Agincourt*, 2014 U.S. Dist. LEXIS 114348, at *19 ("That risk [of inconsistent rulings] is heightened in a case like this one where the issued subpoenas require compliance from different non-parties in different districts.").

The Subpoenaed Parties do not grapple with the risk of inconsistent outcomes or the relevant authorities in their opposition briefs.  Instead, they protest Google's subpoenas in the

---

[13] It is clear from their various letters, objections, and filings that the Subpoenaed Parties in DC and NY have shared a common litigation strategy and coordinated their responses. *See* Google's Mem. ISO Mot. to Transfer, Dkt. No. 9, at 5 n. 5.  The MPAA and Jenner dropped all pretense of independence from one another by filing joint opposition briefs. For its part, the DCA claims that its "objections and privilege claims are unique to it." DCA Opp. at 14.  But its relevance, burden and privilege positions have been effectively identical from the start.

first place (ignoring the insights into AG Hood's behavior that the subpoenas have already

yielded), and claim that "[t]he mere issuance of subpoenas followed by motions to compel in

multiple districts is not, and cannot, be sufficient to justify a transfer to the district where the

underlying action is pending." MPAA/Jenner Opp. at 10; *see also* DCA Opp at 14. But their

say-so is not law. Courts regularly hold that the pendency of discovery motions implicating the

same issues in multiple jurisdictions *is* sufficient to warrant transfer. Google's Mem. ISO Mot.

to Transfer, Dkt. No. 9, at 10 (quoting the *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46

(D.D.C. 2014) ("[The] potential for inconsistent rulings should be avoided and weighs in favor

of a single judicial officer deciding all of these disputes").

The logic supporting transfer is even stronger where, as here, the multiple subpoenas are

in service of fact development for a case on a tight schedule with a looming discovery deadline.

Transfer of the motions helps to ensure discovery can be completed within the confines the

schedule that Judge Wingate has set.[14]

*****

The argument for transfer is straightforward: the Mississippi Court has already ruled on

questions of relevance that directly bear on the motions here; there is also a pending motion in

Mississippi that raises similar issues to these; there is a live dispute the interpretation of the

Mississippi Court's orders; and there are overlapping discovery motions in multiple jurisdictions

---

[14] Google's Mem. in Supp. of Unopposed Mot. to Extend Discovery Deadline, MS Dkt. 131 (explaining tight discovery window). AG Hood represented that his office was unable to timely produce documents that Google requested, because a member of his staff was ill. Accordingly, Judge Wingate recently extended the discovery period by 30 days. MS Dkt. 133 (discovery now closing in the underlying case on August 10, 2015).

creating a risk of inconsistent outcomes that could impact the management of the underlying case. Taken together, these exceptional circumstances make this the model case for transfer.

## II.    Transfer Would Not Unduly Burden the Subpoenaed Parties

Given their extraordinary role in the underlying events in Mississippi, the Subpoenaed Parties' contention that they would be unduly burdened by having to litigate a single motion to compel in the state is not credible. The Subpoenaed Parties exerted substantial influence to foment an investigation of Google that Judge Wingate has now deemed likely unlawful.[15] They did that in part by repeatedly sending representatives on the same short trip to Mississippi they here claim is too burdensome. (MPAA/Jenner Opp. at 13; DCA Opp. at 17.).

The DCA avers that it "does not have familiarity with litigation in courts other than in Washington, D.C." (DCA Opp. at 15, internal quotation marks omitted). But it actually retained a Mississippi lawyer in Mike Moore, AG Hood's predecessor, and worked directly with AG Hood on the MPAA's anti-Google efforts. Nor is the DCA a stranger to Judge Wingate's court: it already appeared as an amicus through the same counsel representing it here.[16] MS Dkt. 43,

---

[15] As discussed in Google's Reply ISO Mot. to Compel (at 6-7), AG Hood actively sought the Subpoenaed Parties' help in formulating his positions on Google, spreading that agenda to other state attorneys general, and responding to Google's contentions. Supp. Rubin Decl. Exh. 3, JB_00000082-84 (Oct. 17, 2013 email from Hood to MPAA's outside counsel at Jenner, Tom Perrelli, thanking him "for the excellent draft letter" to Google, which Perrelli had sent ten days earlier as a draft "respon[se] to the letter Google sent you"); *id*. Exh. 2, JB_00000333-34 (Feb. 21, 2014 request from Hood's office to Moore, MPAA, and Orrick for "feedback [and] suggestions" on letter from Google); *id*. Exh. 4, JB_00000364 (Feb. 22, 2014 email from Perrelli providing Hood's office with "some thoughts on responding" to Google; attachment containing those "thoughts" withheld). The MPAA's production this week drives home the point further. Second Supp. Rubin Decl. Exh. 9, MPAA00001141-42 (June 18, 2013 email where Brian Cohen sets out a list of talking points for AG Hood to respond to a Google Public Policy Blog post regarding pharma); *id*., Exh. 10, MPAA00001115 (June 18, 2013 email showing AG Hood's office adopting a press release drafted by the MPAA and its PR team with only "some minor changes."); *id*., Exh. 11, MPAA00000564-65 (May 21, 2013 email from Brian Cohen arranging a PR firm to assist AG Hood).

[16] The DCA suggests that Google has subjected it "to onerous discovery simply because [it] submit[ted] an *amicus* brief in the underlying case." DCA Opp. at 11 n. 20. That is false. Google did not subpoena the DCA because it filed an *amicus* brief. It did so because of the DCA's role in influencing AG Hood to take improper, retaliatory action against Google. *See, e.g.*, Moore Article (detailing the DCA's use of Mike Moore to lobby AG Hood); Second Supp. Rubin Decl. Exh. 8, MPAA00000509-16 (showing Tom Galvin of the DCA meeting with

99.  The similar claim of burden is equally implausible from the MPAA and Jenner who are

represented by Jenner itself, a national law firm whose lawyers have repeatedly traveled across

the country to meet with AG Hood to drive the events leading to this lawsuit.[17]

Even if the Subpoenaed Parties established some theoretical burden, Rule 45 addresses it.

The Advisory Committee Notes to Rule 45 "encourage[] [courts] to permit telecommunications

methods to minimalize the burden a transfer imposes on nonparties." Fed. R. Civ. P. 45(f)

Advisory Committee Note (2013).  In other words, the Subpoenaed Parties would be welcome to

appear before Judge Wingate by phone — as the parties have on multiple occasions.  *See* MS

Dkt. (entries on April 6, 2015, April 15, 2015, and May 19, 2015 showing telephone

conferences); Google's Mem. ISO Mot. to Transfer, Dkt. No. 9, at 12 n.9.  Rule 45 also disposes

of the DCA's make-weight plea that, notwithstanding their *pro hac vice* status in the underlying

case, DCA's counsel is not licensed to practice in Mississippi.  DCA Opp. at 17.  Rule 45(f)

automatically allows "the attorney for a person subject to a subpoena … [to] file papers and

appear on the motion as an officer of the issuing court," nullifying any supposed burden. Fed. R.

Civ. P. 45(f).  And the DCA's claim of a potential burden in having to produce documents in

Mississippi (DCA Opp. at 15) is perhaps the most pretextual of all.  The law is clear that transfer

---

Hood); Supp. Rubin Decl. Exh. 8, JB_00000390-91 (Mike Moore and DCA's principal Tom Galvin, along with MPAA and Microsoft lobbyists, discussed that "[t]here has got to be some way to use [the issue of gun safety against Google] both with AGs and media.").

[17] The MPAA and Jenner claim that Google highlighted the DC Subpoenaed Parties "sophistication" as an "exceptional circumstance" warranting transfer. MPAA/Jenner Opp. at 12-13.  Google did not do so.  Rather, it correctly pointed out that *when assessing the burden of transfer for a nonparty*, courts routinely look to whether that "non-party is a national entity represented by sophisticated counsel." Google's Mem. ISO Mot. to Transfer, Dkt. No. 9, at 12 (citing *Judicial Watch, Inc*., 2014 U.S. Dist. LEXIS 140784, at *11).  Even Jenner and the MPAA reluctantly acknowledge, albeit in a footnote, that the sophistication of the parties frequently factors into the court's decision on burden.  MPAA Jenner Opp. at 13 n.13 (admitting that the cases recognize that "whether the subpoenaed party is a large corporation represented by sophisticated counsel" is a relevant factor in the burden analysis) (quotations and citations omitted).

-15-

of a motion to compel does not change the location for *compliance* with the subpoena. *See Agincourt*, 2014 U.S. Dist. LEXIS 114348, at \*21 ("[The non-party] fails to explain — and the Court fails to discern — why the burden of reviewing, assembling, and producing documents is any different depending on which court issues an order for it to do so."). Regardless, Google is happy to receive the DCA's documents wherever convenient for the DCA — Google merely requests that the DCA produce them.

## **CONCLUSION**

The Subpoenaed Parties sought out a Mississippi public official and spent years lobbying him in Mississippi to take the actions giving rise this case. Given that, it is audacious for them to now object to litigating these motions in Mississippi. The exceptional circumstances here favor transfer and far outweigh any minimal burden on the Subpoenaed Parties. For those reasons, Google requests that the Court transfer the Motion to Compel to the Southern District of Mississippi at the earliest possible date for further proceedings.

-16-

Dated:  June 29, 2015

Respectfully submitted,


WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:  */s/ David H. Kramer*

    Veronica S. Ascarrunz (D.C. Bar No. 494474)
    1700 K Street, NW
    Fifth Floor
    Washington, DC 20006
    Email: vascarrunz@wsgr.com
    Phone: (202) 973-8800
    Fax: (202) 973-8899

    David H. Kramer (admitted *pro hac vice*)
    Michael H. Rubin (admitted *pro hac vice*)
    650 Page Mill Road
    Palo Alto, CA 94304
    Email: dkramer@wsgr.com
    Email: mrubin@wsgr.com
    Phone: (650) 496-9300
    Fax: (650) 493-6811

    *Attorneys for Petitioner*
    GOOGLE INC.